# CHARLESTON.

STATE *v.* McCLAUGHERTY.

*(GREEN, JUDGE, Absent.)

Submitted September 13, 1889.—Decided November 21, 1889.

1. CONTEMPT OF COURT—CONSTITUTIONAL LAW.
   Our Statute—sec. 27, ch. 147, Code 1887—regulating the punishment for the classes of contempts therein mentioned, is constitutional and binding upon Circuit and other inferior courts.

2. CONTEMPT OF COURT—CIRCUIT COURT—ATTORNEYS-AT-LAW.
   A Circuit Court has no power, under the provisions of said statute, *by summary proceedings*, to fine an attorney for writing

---

*On account of illness.

and causing to be published in a newspaper a libelous charge against the judge of such court.

3. CIRCUIT COURT—ATTORNEYS-AT-LAW.
    A Circuit Court may, independent and outside of the provisions of sec. 6, ch. 119 of Code 1887, strike the name of an attorney from the roll of such court for sufficient cause, but it can not, except in the manner provided by said statute, suspend or annul the license of an attorney.

4. CIRCUIT COURT—ATTORNEY-AT-LAW.
    When an attorney commits an act, whether in the discharge of his duties as an attorney or not, showing such a want of professional or personal honesty as renders him unworthy of public confidence, it is not only the province but the duty of the court, upon a proper presentation of the case, to strike his name from the roll of its attorneys. But the base character which will justify such action must be such as shows the attorney to be an unsafe and unfit person to be entrusted with the powers of the profession.

5. CIRCUIT COURT—ATTORNEY-AT-LAW—SUMMARY PROCEEDINGS.
    The Circuit Court may by summary proceedings, according to the common law, strike from its roll the name of an attorney who is guilty of writing and publishing in a newspaper a false and libelous charge against the judge of such court in respect to his official conduct, and the disclaimer by the attorney of intentional wrong or disrespect to the judge or court will not excuse him, when the contrary appears upon a fair interpretation of the language employed.

6. CIRCUIT COURT—ATTORNEY-AT-LAW—EX MERO MOTU.
    Circuit Courts have jurisdiction and power upon their own motion, without formal complaint or petition, in a proper case, to strike the name of an attorney from the roll, provided he had reasonable notice and an opportunity to be heard.

*J. W. Davis* for plaintiff in error.

*Attorney-General Alfred Caldwell* for defendant in error.

SNYDER, PRESIDENT:

On December 18, 1888, the attention of the Circuit Court of Mercer county, then in session, was called to an article published in the *Wheeling Intelligencer*, over the signature of D. W. McClaugherty, a member of the bar of said court; and the said McClaugherty then present, admitted in court, that he was the author of said article, and declining to disclaim that it was his purpose in writing said article to reflect upon the court, the court thereupon awarded a rule against

him to appear before it on December 19, 1888, to answer for his contempt and show cause, why he should not be attached and fined for writing, and causing the said article to be published ; and further to show cause why the privilege theretofore granted him to practice as an attorney in said court should not be revoked on account of said publication. On the return day of said rule the defendant appeared and moved the court to dismiss the rule, which motion the court overruled, and thereupon the defendant tendered his answer, which the court adjudged insufficient and gave him until the next day to tender another answer. On the following day the defendant, by leave of the court, filed his answer to said rule, in which he denied, that the writing and publication of said newspaper article constituted misbehavior in the presence of the court or so near thereto as to obstruct or interfere with the administration of justice. He also denied that it constituted any of the offences specified in the *second*, *third* and *fourth* clauses of section 27 of chapter 147, Code, and hence it was not such a contempt as could be summarily punished under the said 27th section of said statute. , The defendant further answered, that no contempt or disrespect to the court was intended by said writing and publication, or that it had reference to any matter then pending before the court. Thereupon the court, on consideration of certain facts, a part of them appearing of record in said court, found that said publication was false and libellous, and that the defendant was guilty of a contempt of the court, and also of a flagrant and willful abuse of his privilege as an attorney and officer of the court, and ordered an attachment to issue against the. defendant. And the defendant being in court waived the formal issuance and service of the attachment; thereupon the court adjudged and ordered that the defendant for his contempt, pay to the State a fine of $50.00, and directed a *capias pro fine* to issue against him for the costs; and further, that the privilege theretofore granted to the defendant to practice as an attorney in said court be revoked. To this order and judgment the defendant obtained this writ of error.

The first error assigned by the plaintiff in error, is that the court erred in overruling his motion to dismiss the rule.

The question presented by this motion may be divided as follows : *First*, Do the facts alleged in the rule constitute a contempt such as is mentioned and classified in any of the provisions of section 27 of chapter 147 of the Code ? *Second*, Is said section of the statute constitutional and valid in respect to cases such as the one now before us ? And, *Third*, Does the rule show grounds for disbarring the defendant ?

The newspaper article. complained of is made a part of the rule. In respect to the article, it is sufficient to say, that it is a personal attack on the judge of the court in his official conduct, and, if false as the court found it was, it was clearly a contempt and liable to be punished as such. But conceding this to be true, if the aforesaid statute is valid, the court had no power to issue the rule, unless the contempt charged is one of those specified in the said statute ; because it is therein declared, that the courts and judges thereof shall issue attachments for contempts and punish them summarily *only* in the cases therein mentioned.

The cases mentioned are as follows :

"*First.* Misbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice.

"*Secondly.* Violence or threats of violence to a judge or officer of the court, or to a juror, witness, or party going to, attending or returning from the court, for or in respect. of any act or proceeding. had, or to be had, in such court.

"*Thirdly.* Misbehavior of an officer of the court, in his official character.

"*Fourthly.* Disobedience or resistance of any officer of the court, juror, witness, or other person, to any lawful process, judgment, decree, or order of said court." Code 1887, p. 895.

The contempts here mentioned and specified are of the class known and designated *direct* contempts as contradistinguished from *constructive* contempts. *Direct* contempts are such as are committed in the presence, or such as obstruct or interrupt the proceedings, of the court. These may under the statute be punished summarily by the presiding judge. All other contempts are *constructive*, and under our statute are made misdemeanors punishable by indictment. § 30, chap. 147, Code 1887. *State* v. *Frew*, 26 W. Va. 214.

The following quotations contain the most direct charges made in the said publication in respect to the official acts of the judge:

"A few days before the commencement of the Circuit Court, the judge thereof publicly desired the prosecuting attorney to have summoned before the grand jury all persons most likely to know of offences against the election laws. He was answered, 'I am endeavoring to do so.' Thereupon he replied, 'If you are not going to do so, I shall have some one who will.' He received the reply 'that is my duty and none of yours.' To some extent he should be excused for this, because of the depressing effect the result of the election had upon him, so forcibly expressed by his careworn and haggard expression. * * * The charge to the grand jury was not so lengthy upon offences commonly brought to their attention, but in the charge upon offences against the election laws, the dignity of the bench was forgotten and remarks were made by those present that the election was to be contested in the grand jury room. * * * The grand jury was charged by the court, that unless the names of the voters appeared upon the assessor's books, and it was not proven before them that these voters had a permanent residence in the county, it was a *prima facie* case of illegal voting and to indict them. * * * Upon testimony of this character 260 persons were indicted. These all voted at the two strongest Republican precincts in the county. Nowhere else was the vote questioned in this way, although the number of votes cast at the other precincts in the county were largely in excess of the number of names upon the assessor's books. The 260 indictments above mentioned were returned by the grand jury on the 6th day of December, but the Democratic State Executive Committee seems to have been apprised of the fact six days before, to wit, on the 30th day of November, which may be seen by reference to their address. At that date no indictments had been returned by the grand jury and not more than three or four had been made for this offence, and these against Democrats, which fact it would have been impossible to have been known at Charleston except by telegram. Where were the 'conspiracy and fraud,' and who were the 'conspirators?' Evidently in Mercer there

were accessories, hence the effort to induce the grand jury to indict many persons for illegal voting. Was not this promised to the Executive Committee before the 30th day of November? On that day these indictments had not been made, and the records of the Mercer Circuit Court show that this is true. It is nothing but a conspiracy of their own, and the charge of fraud and conspiracy charged in the address is but to hide their own rascality."

The rule avers, that these charges are false and contemptuous, and directly tend to impair the respect due to the authority of the court, and to degrade, insult and bring it into disrepute, and to destroy its efficiency in the administration of justice. Admitting that said charges are all false and contemptuous, none of them constitute a contempt of the character specified in the statute above quoted. They do not come under the *first* class, because neither the charges nor the averments of the rule indicate that there was any misbehavior in the presence of the court, or so near it as to interrupt the administration of justice. They do not come within the *second* class, because there is no pretense of any *violence* or *threats of violence* to the judge or any one connected with the court or in respect to any act or proceeding either in or out of court. They do not come within the *third* class, because the misbehavior was not that of an officer of the court in his official capacity, but of an individual in his private character. Nor do they come under the *fourth* class, because there is no claim that there was any disobedience or resistance of any officer or other person to any process or action of the court. The rule does not, therefore, show any such direct contempt as can be punished summarily by the court under said statute. But, I think, the offence charged in the rule is plainly one within the provisions of the 30th section of the statute, and therefore punishable only as a misdemeanor by indictment. *Ex. Parte Robinson*, 19 Wall, 505.

But it is insisted for the State, that the aforesaid statute is unconstitutional and void; It is said, that, if the legislature can limit the courts in their jurisdiction of contempts and regulate their practice therein, or in relation to the control of attorneys, it can wipe out that jurisdiction altogether, or

render it useless for practicable purposes.. The statute is, it seems to me, simply a regulation of the proceedings and not a limitation upon the jurisdiction of the courts in contempt cases. In *Ex Parte Frew & Hart*, 24 W. Va. 416, this Court held, that this statute was not intended to apply to contempts committed against the Supreme Court of Appeals and that that Court had the power to punish summarily both direct and constructive contempts. But the opinions of the Court in that case draw a distinction between contempts in that Court and in the Circuit Courts. In the former the power to punish summarily both direct and constructive contempts is a necessity while such is not the case in the latter courts. "In the class of constructive contempts mentioned in section 30, the punishment of which in any manner is, as we have shown, absolutely denied to the Appellate Court, the inferior courts still have, under the statute, an efficient means of punishing. They have the right at any time to call before them both grand and petit juries, and under the statute they may with but little delay—almost as summarily as before the statute— punish such contempts. The statute as to such courts may well be regarded as a regulation and, perhaps, a necessary and proper limitation. *Deskins Case*, 4 Leigh. 685 ; *Ex Parte Robinson*, 19 Wall. 505. But this is very different in regard to the Appellate Court. It is deprived of all power to punish such contempts in any manner as contempts or otherwise." 24 W. Va. 476, 477. For these reasons and upon the authorities cited, we hold the said statute constitutional and valid as a regulation of the manner by which contempts shall be punished in the Circuit Courts of this State. From this conclusion, it follows that the Circuit Court had no power to issue the rule for the alleged contempt of the defendant in this case.

It remains to determine whether or not the court erred in revoking the privilege of the defendant as an attorney of that court.

The fifth and sixth sections of chapter 119, Code 1887, are as follows : . "5. Any court before which an attorney has been qualified, on proof made to it, that he has been convicted of any felony, may supersede his license.

"6. If the Supreme Court of Appeals or any Circuit or

County Court observe any malpractice therein, or if complaint be made to any of said courts of malpractice by any attorney therein, such courts shall order the attorney to be summoned to show cause why his license shall not be suspended or annulled, and upon the return of the summons executed, if the attorney appear and deny the charge of malpractice, a jury shall be impannelled to try the same; and if the attorney be found guilty, or if he fail to appear and deny the charge, the court may either suspend or annul the license of such attorney as in its judgment may seem right."

It is very apparent that this statute is intended to apply only to cases the object of which is to suspend or annul the license of an attorney absolutely and in all courts, and not to proceedings for the revocation of the privilege of an attorney to practice in the particular court revoking such privilege. That such is the proper interpretation of the statute appears from the decision in *Fisher's Case*, 6 Leigh. 619, rendered in 1835, under a statute from which ours was taken and as to the question here presented identical with ours. The case before as must, therefore be determined upon the general principles of law and the practice of the courts independently of the statute. *Walker* v. *State*, 4 W. Va. 749; *Mills Case*, 1 Mannings R. 392.

When *Rice's Case*, 18 B. Mon. 473, was decided by the Court of Appeals of Kentucky there was a statute in force in that state very similar to ours, and the court in that case affirmed the judgment of the Circuit Court striking the name of an attorney from the roll of its attorneys by a summary proceeding. The court in its opinion, says : "The defendant in the rule was an attorney at law, and an officer of the court. All courts have the power to control and regulate, to a certain extent, the conduct of their officers, and to inflict on them for their official misconduct, such punishment as the law prescribes. If a court have knowledge of the existence of such official misconduct on the part of any of its officers, it not only has the power, but it is its duty to institute an appropriate proceeding against the officer, and to bring him, if guilty, to condign punishment. And it is much to be regretted that this duty which the law devolves upon the courts of the country is so little regarded, and that the
33

obligations which it imposes are so frequently overlooked or neglected. The official misconduct of an attorney at law may be inquired into in a summary manner by the court, and if guilty of such misconduct his name may be stricken from the roll of attorneys admitted to the practice of law at the bar of the court. 1 Bac. Abr., title attorney, 306." And in the same case on page 484, the court further says : "The power to remove an attorney from the bar ought to be exercised with great caution and discretion, but it is a power incidental to all courts, and unless it be clearly exceeded or abused by a Circuit Court this Court should not interpose, as it can not decide with the same means of information that the court below was in the possession of. *Ex Parte Barr*, 9 Wheat. 529 ; (19 How. 9)."

In *Ex Parte Secombe*, 19 How. 9, the last case above cited, the Court says : "It has been well settled by the rules and practice of the common law courts, that it rests exclusively with the court to determine who is qualified to become one of its officers, as an attorney and counsellor, and for what cause he ought to be removed. The power, however, is not an arbitrary and despotic one, to be exercised at the pleasure of the court, or from passion, prejudice, or personal hostility ; but it is the duty of the court to exercise and regulate it by a sound and just judicial discretion, whereby the rights and independence of the bar may be as scrupulously guarded and maintained by the court, as the rights and dignity of the court itself."

Our statute requires, that a person desiring to obtain a license to practice law in the Courts of the State must appear before the County Court of his county and "prove to the satisfaction of such court that he is a person of good moral character" *etc.* Sec. 1, ch. 119 Code.

If the evidence of such moral character must be produced in order to obtain the license, it is equally essential that this character should be retained ; and when an attorney commits an act, whether in the discharge of his duties as such or not, showing such want of professional or personal honesty as renders him unworthy of public confidence, it is not only the province but the duty of the court, upon this fact being made to appear, to strike his name from the roll of attorneys.

Nor is it necessary that the offence should be of such a nature as would subject him to an indictment. He has by his own misconduct divested himself of qualifications that are indispensable to the practice of his profession; and while he may regard the judgment depriving him of that right as a punishment for the offence, the action of the court is based alone upon the ground of public policy and for the public good. It would be carrying the doctrine too far to hold, that an attorney must be free from every vice, and to strike him from the roll of attorneys because he may indulge in irregularities affecting to some extent his moral character, when, such delinquencies do not affect his personal or professional integrity. To warrant a removal his character must be bad in such respects as show him to be unsafe and unfit to be entrusted with the powers and duties of his profession; and it is not essential that this misconduct or bad character should be in respect to some deceit, malpractice or misdemeanor practiced or committed in the exercise of his profession only; but in the exercise of a sound discretion the court should only entertain such charges as are in their nature gross, and unfit a person for an honest discharge of the high and responsible trust reposed in an attorney. It would be unjust to the profession, the purity and integrity of which it is the duty of all courts to preserve, and a disregard of the public welfare to permit an attorney, who has forfeited his right to public confidence, to continue the practice of his profession. The doctrine here announced is fully sustained by the authorities. *Baker's Case*, 10 Bush 592; *Leighs Case*, 1 Munf. 481; *People* v. *Turner*, 1 Cal. 144; *Mills Case*, 1 Mich. 394; *In Re Wooley*, 11 Bush 95; *Austin's Case*, 5 Rowle 191; *Jackson* v. *Steele*, 21 Tex. 668; *Ex Parte Bradley*, 7 Wall 364; *Sharon* v. *Hill*, 24 Fed. Rep. 726; *Smith's Case*, 1 Yerg. 228.

The next inquiry is, do the facts in the case at bar warrant the action of the Circuit Court in revoking the privilege of the defendant as an attorney of that court. The court below, as it was competent for it to do, found that the charges against the judge contained in the newspaper article set out in the rule were false, scandalous and libelous, and directly tended to impair the respect and authority of the court, and to degrade and insult and bring it into dis-

repute and destroy its efficiency in the due administration of justice. If it could be considered at all doubtful, whether or not this is the true, purport and meaning of the article, we may safely assume, that it meant to charge, and does charge, that the judge of said court had as such judge, for partisan purposes, corruptly combined and conspired with the Executive Committee of the Democratic party, and other persons, to unjustly and improperly induce the grand jury of his court to indict many persons for alleged illegal voting in Mercer county. This charge being false, we have no hesitation in pronouncing the publication to be a gross libel on its face, and one which no person of character and a proper sense of his duty as an attorney would make. If one private citizen should make such a false accusation against another it would be a base act, and when it is made against a judge, in respect to his official conduct, by an officer of his court the offence is greatly aggravated and intensified, and manifests a much greater degree of turpitude and depravity. To call such an act misconduct simply, is to express but little of its vileness. The disclaimer of the defendant, in his answer, of intentional disrespect to the judge, or design to embarrass the administration of justice is no excuse, where the contrary appears on a fair interpretation of the language used. *People* v. *Wilson*, 64 Ill. 195.

It seems to me, therefore, clearly, according to the principles and authorities hereinbefore announced and referred to, that the said publication, was, under the circumstances, such gross misconduct on the part of the defendant as to justify the judgment of the court in revoking his right to practice in said court. The misconduct was at least of such a nature as that for which the Court might remove him, and having, in its discretion, done so, this Court ought not to reverse its action.

*Ex Parte Steinman*, 95 Pa. St. 220, was a case in many respects just like the one before us. The Supreme Court reversed the judgment of the inferior court in that case, but the reversal was put upon the express ground, that the judgment was in violation of the seventh section of the Bill of Rights in the constitution of that State, which declares, that " no conviction shall be had in any prosecution for the pub-

lication of papers relating to the official conduct of officers or men in public capacity, or to any other matter proper for public investigation or information where the fact that such publication was not maliciously or negligently made, shall be established to the satisfaction of the jury." The Court, in its opinion in that case, says: "This is a new and very important provision introduced into the Bill of Rights by the Constitution of 1873. It would be a clear infraction of the spirit if not of the letter of this article to hold that an attorney can be summarily disbarred for the publication of a libel on a man in a public capacity, or where the matter was proper for public investigation or information." We have no such provision in our constitution, and therefore we, as the Supreme Court of Pennsylvania, evidently, would have done in the case cited but for said constitutional provision, refuse to reverse the judgment in this case.

The only other question to be considered is, whether or not the proceedings in the Circuit Court were such as allowed the defendant a proper defence, and such as are in accordance with law and the practice of the courts in such cases. The same rule was the foundation of this proceeding as well as that for the contempt. There was no specific motion made in the court below to quash the rule on the ground that it charged two distinct offences. The same act constituted both offences, and the defendant filed his answer to the whole rule and defended on the merits. It is unnecessary at this stage of the case, after it has proceeded in the court below on the merits, to decide whether or not, if the proper objection had been taken in the lower court, this Court would reverse the judgment, simply because the two offences had been united in one proceeding. The material question now is, ought the judgment to be set aside by this Court, under the circumstances, for that reason only. It seems to me it should not. The rule as to the alleged contempt having been, as we have seen, held insufficient to authorize any judgment for that offence, so much of the rule and proceedings as relate to the contempt, may now be properly treated as surplusage, and therefore of no effect according to the maxim, *Utile per inutile non vitiatur.* Broom's Max. 627.

Accordingly, so regarding the matter relating to the con-

tempt, it seems to me the proceeding against the defendant was such as is usual in such cases. In *Ex Parte Steinman*, 95 Pa. St. 220, the Court decided, that "Courts have jurisdiction and power, upon their own motion, without formal complaint or petition, in a proper case, to strike the name of an attorney from the roll, provided he has had reasonable notice and an opportunity to be heard." *Wall's Case*, 107, U. S. 265; *State* v. *Frew*, 24 W. Va. 416.

The defendant here was duly summoned, appeared before the court, answered the rule and made a full defence. I can discover no defect in the mode of proceeding for which the judgment should be set aside. For the reasons before stated, I am of opinion, that so much of the judgment and proceedings of the Circuit Court as holds the defendant guilty of a contempt of the court and imposes a fine upon him must be reversed and that in all other respects the said judgment must be affirmed. But the plaintiff in error having prevailed in this Court as to that part of the proceeding relating to the contempt, the State is not entitled to costs against him in this Court.

AFFIRMED IN PART.    REVERSED IN PART.