In the Matter of the Disbarment Proceedings Against
   ALVIRAS E. SNOW, W. H. WILKINS and J.
   M. BOWMAN, Respondents.

### No. 1460.   (75 Pac. 741.)

1. **Attorneys:   Disbarment:   Unprofessional   Conduct:
   Scandalous Pleadings: Defenses.**
   Where false allegations employed in a pleading reflect upon the
      character of a justice of the Supreme Court as a judicial
      officer, the party using such language can not be excused
      by filing, in disbarment proceedings, a disclaimer that any
      such meaning was intended.

2. **Same.**
   Constitution, article 6, section 19, provides that judicial officers
      shall be liable to removal from office for crimes, misde-
      meanors, or malfeasance in office. Revised Statutes 1898,
      section 4156 makes it a criminal conspiracy for two or
      more persons to conspire to falsely maintain any action.
      Defendant's answer in an action alleged that a justice of the
      Supreme Court had conspired with plaintiff, and used the
      weight of his personal, as well as judicial, influence to in-
      duce plaintiff to bring the suit, and that it was not bona
      fide, but colorable, and brought solely for the purpose of
      gratifying the malicious instincts of the justice, and on an
      understanding that the fruits of the litigation should be di-
      vided between the justice and plaintiff.    *Held*, that the
      language meant that the justice had bartered his judicial
      influence for a portion of the fruits of the litigation, and
      hence charged a conspiracy rendering the justice, if true,
      liable to removal from office.

3. **Same.**
   Counsel are exempt from liability for defamatory language in
      the pleadings published or uttered in the course of judicial
      proceedings, provided such language is pertinent and ma-
      terial to the case. But this rule of lenience does not apply,
      and cannot be pleaded as a defense, in proceedings to dis-
      bar an attorney for maliciously slandering the judge be-
      fore whom he has conducted litigation; in such a case the
      defendant can only protect himself by showing the truth
      of the charges alleged.

4. **Same.**

An attorney may allege in his pleadings any facts pertinent to the case which, if proved, would entitle him to relief, and he will be protected even though he should fail in making his proof to substantiate them but the protection thus accorded him can not be used as a shield to protect him in making false, scandalous and defamatory charges against a court or judicial officer.

5. **Same.**

The action in which the answer was filed having been one for the cancellation of a contract between plaintiff and defendant, and the allegations in question having been false, malicious and irrelevant to the issue, the defendant in the action, who was an attorney and was responsible for the allegations in the answer, should be disbarred for a period of 60 days.

BASKIN, C. J., dissenting in part, and holding that two of the respondents should be permanently disbarred.

(Decided February 15, 1904.)

Original.

In pursuance of an order made by this court in the case of Morrison v. Snow, 26 Utah 247, 266, a citation was issued to A. E. Snow, W. H. Wilkins and J. M. Bowman requiring them to appear in this court and show cause why their licenses as attorneys at law should not be revoked for unprofessional conduct.

DISMISSED (as to respondents Wilkins and Bowman.)

MODIFIED (as to respondent Snow.)

*Alviras E. Snow*, Esq., in propria persona.

*W. H. Wilkins*, Esq., in propria persona.

*J. M. Bowman*, Esq., in propria persona.

*J. E. Frick*, Esq., *C. C. Richards*, Esq., and *E. M. Allison, Jr.*, Esq., amici curiae.

### STATEMENT OF FACTS.

In pursuance of an order made by this court in the case of Morrison v. Snow, 26 Utah 247, 266, 72 Pac. 924, a citation was issued under the seal of the court to A. E. Snow, W. H. Wilkins, and J. M. Bowman, requiring them, and each of them, to appear in this court and show cause, if any they have, why their licenses as attorneys and counselors at law should not be revoked for unprofessional conduct and the violation of their oaths as such attorneys and counselors at law. The unprofessional conduct upon which the order and citation were based consisted of certain false and slanderous charges made by Snow in his answer filed in the suit of Morrison v. Snow et al., supra. By an examination of the record in that case it will be seen that Morrison brought an action in equity against Snow to have canceled and rescinded a certain contract entered into between them whereby Morrison sold and delivered to Snow 145,000 shares of mining stock. The only relief asked by Morrison was a cancellation and a return of the mining stock, which he alleged Snow had obtained from him through fraud. Snow, in his answer, denied the material allegations relied on by Morrison for a recovery, and further alleged that Mr. Justice Bartch, who was then, and is now, a member of this court, but who was in no way or manner connected with the transaction which was the subject-matter of the action, "conspired and confederated with the said Morrison, and used the weight of his personal as well as judicial influence to induce the said Morrison to bring his said suit; that the said suit is colorable, and is not a bona fide suit, but is brought and is the result of a conspiracy between the said Bartch and the said Morrison for the sole purpose of gratifying the malicious instincts of said Bartch, . . . and it is agreed between them that the fruits resulting from this suit, if any, shall be divided between the said Bartch and the said Morrison." In his prayer Snow asked that Justice Bartch be made a party to the suit, which was done.

It will be readily observed that Justice Bartch was neither a necessary nor proper party to the action, as Snow's ability to defeat the action and prevent a recovery by Morrison in no way depended upon the truth or falsity of the charges made against Justice Bartch. Morrison's right to a recovery depended entirely upon his ability to prove the fraud alleged in his complaint, and any advice he may have received, or any influence, if any, that may have been brought to bear on him to induce him to bring the action, could in no way affect his legal rights. The evidence, however, in the case, affirmatively shows that the foregoing allegations against Justice Bartch were utterly false and without any foundation whatever. On this feature of the case the trial court found "that the allegations in the answer of the defendant Alviras E. Snow of and concerning the defendant George W. Bartch were and are false, and no evidence was introduced on the hearing tending in any degree to sustain the same, . . . and all such allegations in the answer of Alviras E. Snow are false and made without foundation in fact, and they are not sustained by any testimony whatever." As a conclusion of law the court found "that the allegations in the answer of defendant Alviras E. Snow . . . of and concerning defendant George W. Bartch are scandalous and malicious, and that the same be, and by order and decree of this court are, stricken from the files and records of this court as scandalous, malicious, and impertinent." In the decree the court "ordered and adjudged that the allegations contained in the answer of the defendant Alviras E. Snow . . . concerning the defendant George W. Bartch are impertinent and scandalous, and that they be and are stricken from the files of this court."

Each of the respondents has filed his separate answer to the citation. Alviras E. Snow in his answer, so far as material here, alleges that "certain allegations were made by affiant in his answer in the case mentioned in the citation, to-wit, C. D. Morrison v. Alviras E. Snow

In re Snow.

et al., which were construed to be prejudicial to the name
of the said Honorable Geo. W. Bartch; but whatever
was said by affiant, either in his answer or as a witness
in said case, nothing was by him written or said with
intent to impugn the honor or reflect upon the integrity
of the said G. W. Bartch as a member of this honorable
court, as a judicial officer." And again: "That affiant
had no intention whatever of casting any reflection upon
this court, or upon the Honorable Geo. W. Bartch, as a
member of this court, and that, if there be anything
which can be so construed, it was certainly not inten-
tional on the part of this affiant." He concludes his an-
swer by alleging that he only knows in a general way
what charges are meant to be made against him, and
asks that if any further action is to be taken against him
that the charges be made more specific. This latter plea
is also interposed by respondent W. H. Wilkins. In
the opinion of this court in the case of Morrison v. Snow
et al., supra, the scandalous matter above referred to,
and upon which the order and citation is based, is set
out in detail and very fully considered and discussed,
and a casual reading of the opinion will not leave any
doubt as to what the unprofessional conduct mentioned
in the order and citation consists of; hence there is abso-
lutely no merit whatever to the plea that respondents
are not fully advised of what they have to meet and an-
swer.

Respondent Wilkins, in his answer alleges, in part,
as follows: "Believing that a proper respect for this
honorable court demands it, emphatically and unequiv-
ocatingly disclaims any intent to show disrespect to this
court, and insists that none of his actions as an attorney
or otherwise can be in any way construed as disrespect-
ful to this court; that the allegations incorporated by
said respondent into the answer of said Snow were so
incorporated by him as Snow's attorney after the same
were vouched for as true by said Snow, who was a man
of truth and veracity, as well as of business standing in
this community, respondent also being advised that said

Snow was an attorney at law and an officer of this court, and Snow's said answer was therefore so prepared; . . . that said charges were so incorporated into said answer after a careful consideration of, and a full and firm belief in the truth of, the same; that the said allegations were so made against the said Bartch as an individual, and not as a judge of this court; that no charge was made of any abuse of his official position, but simply of the use of the 'weight of influence' derived from his said position and that only, in so far as the said Bartch could not, if he engaged in ordinary business affairs with men, divest himself of the 'weight of influence' derived from his official position. Respondent further expressly disclaims being actuated in said proceedings by any malice whatever against the said Bartch in incorporating said charges in said answer as aforesaid, respondent being at the time a total stranger to, and having no relations of any kind whatever, official or otherwise, with the said Bartch; but respondent states that he is simply actuated in said proceedings by his sense of duty to his client, and, while hoping that in the conduct and management of so difficult a case he was able to do and did do his whole duty in this regard, he does not feel, after a careful consideration of his acts, that he has exceeded that duty in any degree."

Respondent J. M. Bowman, in his answer, so far as material here, alleged: "That he was one of the attorneys for plaintiff and appellant Alviras E. Snow in the case above referred to; that this defendant did not prepare any of the pleadings or written or printed arguments in said case, and did not have anything directly to do in the preparation or dictation of them or either of them." After stating that he participated in the trial and knew of the allegations contained in the pleadings, and that he honestly and conscientiously believed that the matters therein alleged were proper and legitimate subjects of investigation, and that they, if proved, would affect the legal rights of his client, he further alleged: "That any statements or allegations of facts contained

in said complaint affecting the Honorable George W. Bartch, a justice of this court, were vouched for by defendant's client, and defendant had no knowledge concerning them; but this defendant avers that in giving such statements or allegations any apparent indorsement by signing his name to any of the pleadings or papers in said cause was done solely for the purpose of presenting the grievances of his client to a court for investigation, and was done without any malice or ill-will against said Bartch, and without any intent to reflect upon the integrity or character of said Bartch, nor with the intent in any way or in any manner to attack the dignity of this or any other court or judge thereof." The defendant in the same dignified tone explains his connection with the case on appeal.

The disclaimers that respondents intended to reflect upon Justice Bartch as a member of this court, or as a judicial officer, can not excuse them, as the language used clearly shows the contrary to be the case. It charges the justice with having "conspired and confederated with the said Morrison, and used the weight of his personal as well as judicial influence to induce the said Morrison to bring the said suit."

McCARTY, J., after stating the facts, delivered the opinion of the court.

It will be observed that Snow referred to Justice Bartch as a person possessing, first, a "personal," and second, a "judicial," influence, and he charges him with having used the weight of this dual influence—"judicial" as well as "personal"—to incite and stir up groundless litigation, and that his motives for doing so were, first, to gratify his malicious instincts, and, second, to share in the fruits, if any, of the litigation. In other words, Justice Bartch was accused of bartering his judicial influence for a portion of the prospective fruits to be derived from vexatious and groundless litigation. The language used is not susceptible of any other interpretation. The meaning and intent must be determined by a fair interpretation of the language

used. And it is a familiar rule of law that every sane man intends the natural and necessary consequences of his own deliberate acts. 1 Greenl. Ev. 18; People v. Wilson et al., 64 Ill. 195, 16 Am. Rep. 528; State v. Mc-Claugherty, 33 W. Va. 250, 10 S. E. 407. A member of this court is thus deliberately, wantonly, and falsely charged with having entered into a criminal conspiracy (section 4156, Rev. St. 1898), a crime for which, if there were any facts from which guilt could be reasonably inferred, he could, and in all probability would, be made a defendant in a criminal proceeding, and he would also be liable to impeachment and removal from office (section 19, art. 6, Const.). Such false and scandalous accusations, when made by a sworn officer of the court, whose duty it is to maintain the respect, honor, and dignity of the judiciary, is a scandal that must necessarily affect the courts, and has a tendency to degrade and bring into public disrepute the entire judicial department of the State and thereby weaken its efficacy and destroy its usefulness. If such practices are to be permitted and indulged in by attorneys who are indifferent to the duties imposed upon them by the oath they have have taken, and who have but little or no regard for the ethics of the legal profession—and we regret to say experience has shown that occasionally one of this class is to be found in nearly every jurisdiction—the confidence that the masses of the people have always had in the courts of justice in this country, and the respect they have always entertained for them, are bound to be to some extent weakened and their moral support accordingly withdrawn. Accusations of so grave and serious a character, when made against a judge in his official capacity, as was done in this case, by an attorney, must necessarily have a much greater influence on the public mind than when made in the heat of passion by some defeated and disappointed litigant, as the public has a right to, and many no doubt will, because of the attorney's position and his connection and affiliation with the courts and judicial of-

In re Snow.

ficers, give credence to the charges, however false and unjustifiable they may be.   Take away the confidence of the people, and the moral influence of both the bench and bar is gone, and their effectiveness destroyed, because the interests of the court and bar are so interwoven that one can not be undermined without pulling down the other.   The enforcement and protection of public and private rights—in fact, civil liberty itself—depends upon the independence of the bar being upheld and maintained inviolate on the one hand, and the respect and dignity of the courts on the other.   In fact, no man who values his character, honor, and good name more than public notoriety, and who has a decent respect for the good opinion of his fellow men, would ever aspire to become a member of a court if he is to be thus falsely and wantonly vilified and slandered by attorneys who are an integral part of the judicial machinery. And no attorney who has any regard for his own manhood and pride for his profession would care to practice before a court which has so far forgotten the respect it owes itself, and its duty to the public, as to permit such outrages to go unrebuked.   Under our system of popular government, the only sure way for the courts to maintain the hight standing for integrity and incorruptibility they have always occupied in the public mind is to merit it by a fearless and conscientious discharge of every moral and legal obligation imposed upon them. But even when they have done this courts can not maintain their dignity, and retain the respect and confidence of the people, if they permit attorneys to recklessly, falsely, and without any justification or excuse whatever, make sweeping charges of official misconduct and corruption against the judicial officers.   And when an attorney in a judicial proceeding, or otherwise, for the purpose of showing his contempt and ill-will for a judicial officer,  willfully makes false and defamatory charges, criminal in character, of official misconduct against such officer, which tend to humiliate and dis-

27 Utah 18

grace him and bring into contempt the court of which he is a member, such attorney not only becomes a reproach, to his profession, but a menace to the dignity of the court, and thereby hinders and obstructs the administration of justice. As was said by this court in considering this same question in Morrison v. Snow et al., supra: . ''In the interest of good government and the protection of individuals and their own dignity, it is absolutely necessary that courts exercise their power, not only to compel their officers to perform their duties in accordance with law and proper decorum, but to revoke the license of an attorney when his conduct is reprehensible and he acts in violation of the statute, and when his retention as an officer would become a reproach to the court and a menace to its dignity and usefulness.''

That courts are inherently clothed with this power, and that it is their duty, in proper cases, to exercise it, however disagreeable such duty may be, is supported by an overwhelming weight of authority. ''The power to strike from the rolls is inherent in the court itself. No statute or rule is necessary to authorize the punishment in proper cases. Statutes and rules may regulate the power, but they do not create it. It is necessary for the protection of the court, the proper administration of justice, the dignity and purity of the profession, and for the public good and the protection of clients.'' Weeks, Attorneys, 154. In 4 Cyc. 908, the rule is stated as follows: ''It is the duty of an attorney not merely to observe the rules of courteous demeanor in open court, but also to abstain out of court from all insulting language and offensive conduct toward the judges personally for their judicial acts. For a breach of this duty the attorney may be suspended or disbarred.'' See case cited in note. And again, on page 911, same volume: ''Professional misconduct or neglect of duty as an attorney is a good ground for suspension or disbarment.'' People v. Green (Colo.), 3 Pac. 65, 49 Am. Rep. 351; In re Brown (Wyo.), 4 Pac. 1085. ''The obligation which attorneys assume when they are admitted

to the bar is not merely to be obedient to the constitution and laws, but to maintain at all times the respect due to courts of justice and judicial officers.   This obligation is not discharged by merely observing the rules of courteous demeanor in open court, but includes abstaining out of court from insulting language and offensive conduct towards the judges personally for their judicial acts;'' and ''so also using written or spoken language reflecting unjustly upon the character or integrity of the judge of the court is conduct unbecoming an attorney and an indignity upon the court, and will justify the summary disbarment of the attorney guilty of it. . . .   It is a general and well-settled rule that counsel are exempt from liability for defamatory language in the pleadings published or uttered in the course of judicial proceedings, provided such language is pertinent and material to the case.   But this rule of lenience does not apply, and can not be pleaded as a defense, in proceedings to disbar an attorney for maliciously slandering the judge before whom he has conducted litigation; in such a case the defendant can only protect himself by showing the truth of the charges alleged.''   A. & E. Enc. Law  (2 Ed.), pp. 306, 307; State v. McClaugherty, 33 W. Va. 250, 10 S. E. 407; People v. Wilson, 64 Ill. 195, 16 Am. Rep. 528; People v. Green, 9 Colo. 506, 13 Pac. 514; Ex parte Wall, 107 U. S. 265, 2 Sup. Ct. 569, 27 L. Ed. 552; State v. Winton, 11 Or. 456, 5 Pac. 337, 50 Am. Rep. 486.

We do not claim, nor do we wish to be understood as holding, that a judge can not be made a party to an action or proceeding or that he can not be sued direct on matters relating to his private transactions, and the party suing, be he attorney or layman, has the same rights and privileges that are accorded to litigants generally.   He may, in good faith, allege in his pleadings any facts pertinent to the case which, if proved, would entitle him to relief, and the party making the allegations will be protected, even though he should fail in his proof to substantiate them.   What we do hold is that attorneys can not be permitted to use

the privilege thus accorded them as a shield to protect themselves in making false, scandalous, and defamatory charges against a court or judicial officer, or for that matter against any person, which charges were not in issue and upon which no relief could be granted, for the sole purpose of scandalizing and disgracing the party at whom they are directed. No attempt was made by respondents to prove the charges made against Justice Bartch, who waived all legal objections that could have been made to the order making him a party, and who came in and answered the allegations charging him with official misconduct, and demanded a full investigation, and the record shows that they not only refused to but were unable to produce a scintilla of proof to support them. Morrison, the only person, excepting Justice Bartch, who was in a position to know just what transpired between the justice and himself, testified emphatically and positively that Justice Bartch never advised him to bring suit against Snow, but, on the contrary, advised him not to sue, and no attempt was made to contradict or disprove this evidence. The evidence on this point is copied in the case of Morrison v. Snow et al., supra. No claim is made in their answers to the order and citation that there was any truth in the accusations made, or that there was any fact or circumstance from which an inference could be drawn of improper conduct on the part of the justice. The only justification or excuse that Snow makes is that he did not intend to reflect upon the justice as a judicial officer.

By request and invitation of the court the bar association of this State appointed a committee consisting of three of their members, all gentlemen of high standing in their profession, to appear at the hearing of this matter, not as prosecutors nor as counsel for respondents, but as friends of the court. After a careful review of the case and the matter upon which the order and citation are based, they unanimously decided that there is not sufficient before the court to authorize

it to further proceed in the matter, and that the proceedings should be dismissed; that while the charges made against Justice Bartch might be a sufficient cause or ground for preferring charges against respondent Snow for unprofessional conduct, from the record as it now stands no penalty can be legally inflicted. The entire record containing the impertinent and slanderous matter under consideration as made and brought to this court by respondents is before us, and after a very thorough examination of it, and many of the adjudicated cases, wherein the same principles involved in this proceeding are exhaustively discussed, we regret to say that we are forced to a different conclusion, as to the court's powers and duties, from that arrived at by the able counsel who have appeared before us and so thoroughly discussed the questions involved.. The attitude of counsel, and the grave and delicate responsibility imposed upon the court, have impelled us to proceed with caution and great deliberation, and to carefully and dispassionately consider every feature of the case, and we feel that to follow the course outlined by counsel would be a warrant and license for unscrupulous and evil-disposed attorneys in the future, whenever they form a personal dislike for a court or judicial officer, or have some fancied grievance against either, to commit similar outrages. For a court to sit supinely by and permit such slanderous and unwarranted charges to be made by one of its own officers against the official integrity of one of its members as was done in the case before us, which the records of the court show conclusively to be false, would be recreancy on the part of the court that would invite, if not merit, contempt for courts and judicial authority, the effect of which would be demoralizing and far reaching.

In view of the fact that respondent Bowman had nothing whatever to do with the preparation of the case and the manly and dignified tone of his answer, we are disposed to accept his plea that he entertained no mal-

ice or ill-will in what he did, and dismiss the case as to him without further comment.

Respondent Wilkins stands in an entirely different light. He prepared the case and drafted the pleadings and assumed the management and control of the case throughout, and if he believed the statements and representations made by his client at the time he prepared the pleadings, respecting the alleged conspiracy between Morrison and Justice Bartch, he must certainly have known of their utter falsity before the trial was concluded, and, as these allegations contained no matter whatever that was pertinent to the case, it was his duty, as an attorney, to at least cease parading them before the court and public. The plea that he believed them to be material and relevant to the case can not be accepted from a man of his intelligence and experience at the bar. That the plea is made in bad faith is evident from the fact that he repeatedly, during his argument of that case in this court, stated: "We [referring to himself and associates] do not ask for anything against Judge Bartch. We care nothing about him," etc. Therefore his conduct can not be too strongly condemned. But in deference to the position of the bar as outlined by the members of the committee who have appealed in the case, and the allegations in his answer that he inserted the scandalous matter referred to in Snow's answer on the assurance of Snow that they were true, the case against him is also dismissed.

The position of respondent Snow, we regret to say, is different from that of either of the other respondents He was not misled and deceived by any statement or representations of others, and he does not claim that there was any fact or circumstance that justified the slightest suspicion of official misconduct on the part of Justice Bartch. Under these circumstances it would be a reproach to the court and a violation of public duty to suffer to go unrebuked and unpunished one of its officers who has thus, without one single fact or circumstance to justify it, willfully, maliciously,

and falsely charged one of its members with having entered into a criminal conspiracy, in which he bartered and sold the weight of his judicial influence for a portion of the prospective fruits of colorable and vexatious litigation, which he alleges such member incited and stirred up for the purpose of gratifying a petty vindictiveness on the part of such member. The offense of Snow is indeed of such gravity that we would be entirely within the law if we should proceed to inflict the severest penalty and permanently disbar him. But Snow, we may assume from the record in this case, has heretofore conducted himself in his profession with uprightness and integrity and as becoming a man of good moral character; and, as said by Justice Field in the case of Ex parte Wall, supra: ''To disbar an attorney is to inflict upon him a punishment of the severest character. He is admitted to the bar only after years of study. The profession may be to him the source of great emolument. If possessed of fair learning and ability, he may reasonably expect to receive from his practice an income of several thousand dollars a year. . . . To disbar him, having such practice, is equivalent to depriving him of his capital. It would often entail poverty upon himself and destitution upon his family.'' And further: ''The power of inflicting such punishment should never been exercised unless absolutely necessary to protect the court and the public from one shown . . . to be unfit to be a member of an honorable profession.'' We acquiesce in the views thus expressed by Justice Field, and therefore conclude that Snow is not unfit to continue in the practice of his profession, although his conduct in the particular matter under consideration was exceedingly reprehensible, and not only merits condemnation, but deserves and must receive such punishment as will emphatically communicate to such members of the profession as have any disposition to offend in like manner our disapprobation of such conduct by officers of this court, and as will impress upon them that similar transgressions in future will be

visited with severe consequences, and that the lenity shown in this case must not be regarded as a precedent by which the court will be governed hereafter in dealing with a like offense.

It is therefore ordered that the respondent Snow be, and he is hereby, suspended from his rights and privileges as an attorney and counsellor in the courts of this State for a period of 60 days from this date.

MARIONEAUX, District Judge, concurs.

BASKIN, C. J.—Under the provisions of subdivision 2, section 120, Revised Statutes, 1898, an attorney may be removed or suspended for a "violation . . . of his duties as such attorney." Under section 122, "proceedings to remove an attorney . . . may be taken by the court for matters within its knowledge, or taken upon the information of another." Under section 122, when the violation by an attorney of his duties is brought to the knowledge of the court, as in the pending matter, by the record in a case in which the attorney appears, the court on its own motion, without formal complaint, affidavit, or petition, may institute proceedings for disbarment or suspension. 6 Ency. Pl. & Pr. 712. The facts upon which the citation in the pending matter is based were brought to the knowledge of this court by the record in the case of Morrison v. Snow et al., presented to us on appeal from the judgment of the Third District Court. These facts are not controverted, and the only question for our consideration is whether they show such misconduct on the part of the attorneys cited to show cause as warrants their disbarment or suspension.

It is clear from the undisputed facts, which are fully stated in the opinion by my associate, Mr. Justice McCARTY, that the allegations in the answer of Snow, relating to Mr. Justice Bartch, as stated in the decree and findings in the case of Morrison v. Snow et al., are impertinent, scandalous, false, and malicious, and that no evidence was introduced to sustain in any degree any

of said allegations. They constituted no defense to the action, and furnished no basis for any relief whatever. Their irrelevancy is so apparent, and their natural tendency so injurious as to utterly exclude the idea that they were made through ignorance of their irrelevancy or for the purpose of asserting any right. The false and defamatory allegations constitute sufficient grounds. for the maintenance of an action for libel, unless, under the law, they are privileged.

In the case of McLaughlin v. Cowley, 127 Mass. 316, the declaration in the suit of Leggate v. Moulton charged McLaughlin with having "caused to be put to death immediately after its birth, an illegitimate 'child born to him," and was signed by the attorney for the plaintiff in that suit. McLaughlin afterwards instituted an action of libel against the attorney, and the Supreme Court of Massachusetts held that "a defamatory statement contained in the declaration in an action signed by counsel, if not pertinent or material to the issue, is not privileged; and in an action of libel against the counsel he can not justify by showing his belief that it was true, the source of his information, or his instructions from his client." In the opinion that court said: "It seems to be settled by the English authorities that judges, counsel, parties, and witnesses are absolutely exempted from liability to an action for defamatory words published in the course of judicial proceedings; and the same doctrine is generally held in the American courts, with the qualification, as to parties, counsel, and witnesses, that their statements made in the course of an action must be pertinent and material to the case. The doctrine thus qualified was set forth by Shaw, C. J., in an elaborate opinion in Hoar v. Wood, 3 Metc. (Mass.) 193. The qualification of the English rule is adopted in order that the protection given to individuals in the interest of an efficient administration of justice may not be abused as a cloak from beneath which to gratify private malice. . . . To hold that such statements, thus uncalled for and irrelevant, are priv-

ileged, as part of pleadings in a cause, would be to disregard the salutary modification of the English rule which has been made by the American courts, and is stated in Rice v. Coolidge, 121 Mass. 393. The defendant stands, therefore, as to liability to an action on account of these statements, precisely as if he had published them in a newspaper, and can not justify by showing his belief that they were true, the sources of his information, or his instructions from his client. It is only when words are published on an occasion which makes them privileged that the belief of the publisher that they are true can be shown.'' In the case of State v. McClaugherty, 33 W. Va. 250, 10 S. E. 407, it was held that ''the disclaimer by the attorney of intentional wrong or disrespect to the judge or court will not excuse him, when the contrary appears upon a fair interpretation of the language employed. See, also, People v. Wilson et al., 64 Ill. 195, 16 Am. Rep. 528.

Notwithstanding the manifest irrelevancy of the scandalous allegations, and the facts, as found by the court below, that ''no evidence was introduced to sustain in any degree said allegations,'' and that the court ordered them to be stricken from the files, they were on the appeal by Snow to this court, incorporated in the record; and in appellant's brief, which, as well as the answer in which the libelous matter is alleged, were prepared by Wilkins, he insisted, with an effrontery which showed an utter disregard of professional ethics that there was evidence tending very strongly to prove the charges against Justice Bartch, and that the order striking them from the files was error, notwithstanding the admission in the appellant's brief that, if the court below had found that the charges were not sustained by the evidence, it would not have been error. Wilkins was the attorney who prepared the answer of Snow and conducted the proceedings both in this and the lower court, and, not content with drafting the obnoxious matter, in the answer of Snow, he was instrumental in spreading the libel upon the records of this

court, printing it in his brief, and in his oral argument uttering it in the face of this court. In view of these facts, and that the scandalous matter was manifestly irrelevant, he cannot justify on the ground that he acted under instructions of his client and upon information furnished by him, and that he did not intend to reflect upon Justice Bartch as a member of this court, as a natural tendency of the false charges was to degrade him, both as an individual and a judge, in the estimation of those who have heard the charges, but who have not been informed that they are utterly false.

Nor can Snow justify on the ground that the irrelevant charges were made by him as a defendant in the action. In the case of People ex rel. Skelton, etc., v. Brown, 17 Colo. 431, 30 Pac. 338, the court held: "Where an attorney incorporated into a printed argument filed in this court upon demurrer scandalous and abusive language against his opponent, not pertinent to the argument, held, that his conduct was grossly unprofessional, for which he might be punished as for contempt or malconduct in office." And in the opinion the court said: "In general, where papers are filed in a cause, it is not difficult to distinguish that which is germane and pertinent to the litigation from that which is foreign, impertinent, and introduced solely for the purpose of scandal and abuse. People v. Green, 9 Colo. 506, 13 Pac. 514; People ex rel. v. Berry, 17 Colo. 322, 29 Pac. 904; Dimond Tunnel Co. v. Faulkner, 17 Col. 9, 28 Pac. 472. That the language used by the respondent in his printed argument filed in this court was grossly unprofessional admits of no controversy. In placing such a document upon the files of this court respondent was not only guilty of contempt, but of malconduct in his office as an attorney. The fact that he himself was a party to the proceeding did not relieve him from responsibility as an attorney when acting as his own counsel."

For the reason stated in the opinion of Justice McCARTY, I concur in so much of the order made in

the matter as relates to J. M. Bowman, notwithstanding he is censurable for permitting his name to be used as an attorney in the answer of Snow, and in the appellant's brief, but in respect to Snow and Wilkins I can not concur, as I am of the opinion that they should be disbarred.