STATE ex rel. DABNEY, Atty. Gen.., v. LEDBETTER.

No. 18323. Opinion Filed Oct. 11, 1927.

Rehearing Denied Nov. 1, 1927.

(Syllabus.)

1. **Attorney and Client—Disbarment of Attorneys—Inherent Power and Statutory Authority of Supreme Court.**

This court has the inherent power, as well as statutory authority as provided by sections 4105-4109, C. O. S. 1921, to disbar an attorney for any willful breach of his professional obligations, and it is its duty to exercise it in a proper case, though it should be exercised with discretion and care and only upon clear legal proof.

2. **Same—Charges Based on Professional Misconduct in Relations with Court.**

If the charge upon which disbarment pro-

ceedings are based involves professional misconduct in the relations of an attorney at law with the court in which he practices, it becomes the duty of the court, upon satisfactory proof of such misconduct, to disbar the attorney and order his name stricken from the roll of attorneys.

### 3. Same—Misconduct of Respondent not Excused by his Intoxicated Condition.

That respondent was addicted to the excessive use of intoxicating liquor, and was in a state of voluntary intoxication at the time of committing the acts of misconduct charged, is not a defense in disbarment proceedings, nor will it be considered in mitigation or excuse.

### 4. Same—Disbarment for Protection of Public Primarily.

This is not a proceeding by way of punishment, though the deprivation of the privileges of an attorney may be a matter of serious importance to a practitioner. It is a measure necessary to the protection of the public, who have a right to expect that courts will be vigilant in withholding, and, if already given, withdrawing, their certificates of qualification and character upon which the public rely.

Original proceeding in Supreme Court for disbarment of Hugh A. Ledbetter, attorney at law, of Ardmore, Okla., respondent. Respondent disbarred.

Edwin Dabney, Atty. Gen., for petitioner.

W. A. Ledbetter and H. E. Ledbetter, for respondent.

HUNT, J. This is an original action in this court commenced and conducted under the provisions of sections 4105 to 4109, inclusive, C. O. S. 1921. On May 2, 1927, the following order was entered by this court:

"In the Supreme Court of the State of Oklahoma. The State of Oklahoma ex rel. Edwin Dabney, Attorney General, Petitioner, v. Hugh A. Ledbetter, Respondent. No. 18323.

### "Order.

"On this the 2nd day of May, 1927, the Honorable J. W. Clark, one of the members of this court, in a conference of this court, moved and requested this court to direct the Attorney General of this state to file a complaint against Hugh A. Ledbetter to the end that certain statements and acts the said Hugh A. Ledbetter is reported to have been guilty of, be investigated, heard, considered, and determined, and if said reports be established as true, that the said Hugh A. Ledbetter be disbarred and his license to practice law canceled.

"Thereupon the said motion and request of the Honorable J. W. Clark was considered by a quorum of this court.

"The court finds that the request and mo-

tion of Justice Clark should be granted, and that the Attorney General should be directed to prepare and cause to be filed a complaint against the said Hugh A. Ledbetter, and that the said Hugh A. Ledbetter should be notified to appear before this court on the 27th day of May, 1927, at the hour of ten o'clock a. m., to answer said complaint.

"It is, therefore, the order and judgment of this court that the Honorable Edwin Dabney, Attorney General of the state of Oklahoma, cause to be filed a complaint against Hugh A. Ledbetter, setting forth reported acts of misconduct the said Hugh A. Ledbetter is alleged to have committed, praying that said Hugh A. Ledbetter be disbarred if the court finds that said acts had been committed by the said Hugh A. Ledbetter.

"It is further ordered that a copy of the complaint together with a copy of this order, be served upon the said Hugh A. Ledbetter by the clerk of this court, and the said Hugh A. Ledbetter is directed to appear before this court on the 27th day of May, 1927, at the hour of ten o'clock a. m., and there show cause, if any he may have, why he should not be disbarred.

"Done in open court this 2nd day of May, 1927.

"Attest:

"(Signed) Fred P. Branson,
"Chief Justice.

"Jessie E. Moore, Clerk (Seal)"

Thereafter, on May 5, 1927, and in pursuance of said order, a complaint, of which the following is a true and correct copy, was filed herein by Honorable Edwin Dabney, Attorney General:

"In the Supreme Court of the State of Oklahoma.

"The State of Oklahoma ex rel. Edwin Dabney Attorney General, Petitioner, v. Hugh A. Ledbetter, Respondent. No. 18323.

### "Complaint.

"Comes now Edwin Dabney, the duly elected, qualified and acting Attorney General of the state of Oklahoma, and in the name of the state of Oklahoma, and upon the direction of this court to file this complaint and institute this action, makes complaint of and against Hugh A. Ledbetter, and respectfully shows to this court, that:

"Said Hugh A. Ledbetter has heretofore been issued by this court a proper certificate and license to practice law. That he is now and has been for the past several years engaged in the practice of law with offices in Ardmore, Okla.

"That by reason of the issuance of said license and certificate to the said Hugh A. Ledbetter, and by reason of his having taken the oath of an attorney as required by the statutes of this state, the said Hugh A.

Ledbetter is and has been at all times hereinafter mentioned an officer of this court and a member of the bar.

"Your complainant further shows to this court that the said Hugh A. Ledbetter has been guilty of conduct unbecoming an officer of this court and an attorney at law, in that he has violated and breached the duties imposed by law upon an officer of this court, and an attorney in the following particulars, to wit:

"That the said Hugh A. Ledbetter is now and has been for a long period of time engaged in a vindictive, malicious, systematic and continuous, scurrilous attack upon this court and other courts, seeking by his false statements and aspersions to cast reflection upon the members of the courts and to destroy the confidence and respect of the public in this and other courts.

"Your complainant specifically shows and herewith sets forth specific acts of misconduct wherein the said Hugh A. Ledbetter has both violated his oath as an attorney and breached the duties enjoined upon him by law in the following:

"That the said Hugh A. Ledbetter did state and advise one H. B. Martin that he, Hugh A. Ledbetter, had bribed the Honorable J. W. Clark, one of the members of this court, by giving to the said J. W. Clark $750 and taking a receipt therefor, the object, purpose, and intent of said action being to improperly obtain from said J. W. Clark an opinion favorable to the interest represented by the said Hugh A. Ledbetter in a cause then and there pending in this court. That said statement and representation so made by the said Hugh A. Ledbetter to the said Martin was false and untrue and was made by the said Hugh A. Ledbetter to the said H. B. Martin for the malevolent, wicked, and foul purpose on the part of the said Hugh A. Ledbetter to give unto the said H. B. Martin colorable cause to incorporate at length the said scandalous, defamatory, and scurrilous statement in an affidavit or motion for continuance to be prepared and filed by the said H. B. Martin in cause No. 18080, pending before this court, wherein the said H. B. Martin was being proceeded against for a contempt of this court. The said Hugh A. Ledbetter thereby designing, knowing, and intending that the said false statements would be so incorporated in such an affidavit or motion, and that the same would be published in the newspapers of this state, and thereby such sensational, scandalous, vicious, scurrilous, and defamatory false charges conveyed to the citizens of the state, to the end that the confidence and respect of the public in this court and other courts would thereby be destroyed. That a copy of the affidavit of H. B. Martin in cause No. 18080, incorporating and referring to the oral and written statements made by said Hugh A. Ledbetter

to the said H. B. Martin, is attached hereto under the mark of Exhibit 'A,' filed herewith and by reference made a part hereof.

"Your complainant states in the alternative that if the statements made by the said Hugh A. Ledbetter to the said H. B. Martin, referred to in the preceding paragraph and particularly detailed in Exhibit 'A,' are or were true, then the said Hugh A. Ledbetter was guilty of misconduct unbecoming an attorney and officer of this court, violated his oath of office, breached the duties enjoined upon him by law, and did commit a felony, to wit, the crime of bribery. But your complainant states that said transaction detailed in said Exhibit 'A' did not occur.

"Your complainant further shows that the said Hugh A. Ledbetter has orally stated and published to divers and sundry citizens that the Honorable George M. Nicholson, former Chief Justice of this court, and other judges of courts of this state have accepted bribes and that he, the said Hugh A. Ledbetter, had by means of employing detectives discovered evidence incriminating judges of this state, and had stated and published to various and sundry individuals of this state that by means of such discovery he had, and was successfully intimidating the judges of said courts by reason of having acquired supposed information and evidence tending to prove alleged official corruption and bribery, thereby coercing judges of said courts into deciding and determining controversies in his favor regardless of the merits of said cause.

"Your complainant further shows that said Hugh A. Ledbetter was one of counsel for H. B. Martin in cause No. 18080, and did, while examining the respondent, H. B. Martin, under oath, commit the offense of subornation of perjury, in this, that by direct, leading, and suggestive questions he elicited from the said H. B. Martin the sworn statement that he, the said Hugh A. Ledbetter, had stated and advised the said H. B. Martin that two of the members of this court, Justices C. W. Mason and Fletcher Riley had been seen by him in the city of Ardmore in September, 1926, in the presence of another member of this court, the Honorable James I. Phelps, in a drunken, intoxicated, and riotous condition, then and there knowing that said testimony so elicited and prompted was false and untrue, and then and there elicited said testimony for the wicked and malevolent purpose of causing the same to be published in the press of this state, so that the confidence and respect of the public in this court might be impaired and destroyed, and malevolently and unjustifiably injecting offensive personalities prejudicial to and reflecting upon members of this court. That immediately after completing the examination just referred to, the said Hugh A. Ledbetter was called into the office of Honorable James I. Phelps and there asked wheth-

er or not he had made such statements, and that said Hugh A. Ledbetter then and there said, that he had not seen Justices Fletcher Riley and C. W. Mason in an intoxicated condition in the city of Ardmore, or upon any other occasion, and that no one had ever told him that either of said justices had been in an intoxicated condition.

"Wherefore, your complainants prays that this court issue its notice to the said Hugh A. Ledbetter, requiring him to appear before this court on a day and date certain to show cause, if any he may have, why this court should not render judgment against him canceling his license and certificate to practice law and disbarring him from the practice of law in the state of Oklahoma.

"(Signed) Edwin Dabney, Attorney General."

Thereafter, and on May 27, 1927, respondent appeared by his attorney, Honorable W. A. Ledbetter, and filed his answer to the complaint, same being in words and figures as follows, to wit:

"In the Supreme Court of the State of Oklahoma.

"State of Oklahoma ex rel. Edwin Dabney, Attorney General. Petitioner, v. Hugh A. Ledbetter, Respondent. No. 18323.

"Answer of Respondent

I.

"Now comes Hugh A. Ledbetter, respondent in the above styled cause, and for answer to the complaint filed against him herein admits that for a long time he has been, and is now a duly and legally licensed attorney at law, and that he is now, and has been for several years past, engaged in the practice of law with offices at Ardmore, Okla., and that by reason of his license to practice law issued to him by this court, and the oath taken by him, as required by the statutes of this state, he is now, and has been at all times hereinafter mentioned, an officer and member of the bar of this court.

II.

"The said Hugh A. Ledbetter denies generally all the allegations contained in said complaint charging that he has been guilty of conduct unbecoming an officer of this court and an attorney at law, and denies that he has at any time violated his oath of office as an attorney at law, or that he has violated or breached the duties imposed by law upon an officer of this court; and the said Hugh A. Ledbetter specifically denies that he is now and has been for a long period of time engaged in a vindictive, malicious, systematic, and continuous, scurrilous attack upon this court and other courts, seeking by false statements and aspersions, to cast reflections upon the courts,

destroying the confidence and respect of the public for this and other courts.

"With respect to the first specific act of misconduct alleged against him, wherein it is charged that this respondent stated and advised one H. B. Martin that he, the said Hugh A. Ledbetter, had bribed the Honorable J. W. Clark, one of the members of this court, by giving to the said J. W. Clark $750 and taking a receipt therefor, the object, purpose and intent of such action being to improperly obtain from the said J. W. Clark an opinion favorable to the interests represented by the said Hugh A. Ledbetter in a cause then and there pending in this court, the said respondent states that said charge is wholly false and untrue, and that he never at any time told the said H. B. Martin that he had bribed the said Honorable J. W. Clark by giving him $750 to improperly obtain from the said Clark an opinion in any case pending in this court; that the said Hugh A. Ledbetter denies that he made any representation to the said Martin, with the malevolent, wicked and foul purpose or for any other purpose, to give to the said Martin colorable cause to incorporate at length said statement in an affidavit or motion for a continuance, to be prepared and filed by the said Martin in cause No. 18080 pending in this court; and the said Hugh A. Ledbetter further denies that he ever intended that any statement made by him to the said H. B. Martin, with reference to the said J. W. Clark, would be published in the newspapers of the state; that, as a matter of fact, the said Hugh A. Ledbetter was out of the state of Oklahoma from April 20, 1927, until May 21, 1927 and during all of said time was suffering from a serious and dangerous affliction, and he is informed and believes, and therefore states the facts to be, that the motion for a continuance referred to in said complaint was, on account of the absence of this respondent from the state during said time, and this respondent now states that he had no knowledge whatever that the said H. B. Martin would file any motion for a continuance of said cause No. 18080; or, in any motion filed for the continuance thereof, that he would refer to any statement made by the respondent to the said Martin, and this respondent denies that in said motion for a continuance, or affidavit in support thereof, the said Martin stated that he, the said Hugh A. Ledbetter, had told him that he, the said Hugh A. Ledbetter, had bribed J. W. Clark, a member of this court, by giving him the sum of $750, or any other sum, to improperly obtain from the said J. W. Clark an opinion of any kind whatever.

"This respondent respectfully calls the court's attention to the fact that the affidavit of the said Martin in said cause No. 18080, incorporating certain statements alleged to have been made by the said Hugh A. Ledbetter, contains no statement or

charge that he, the said Hugh A. Ledbetter, claimed to have bribed the said J. W. Clark as alleged in said complaint, but, on the contrary, said affidavit affirmatively shows that the said Hugh A. Ledbetter had made no such statement or charge to the said H. B. Martin with reference to the alleged bribery of the said J. W. Clark, and this respondent states that the affidavit of H. B. Martin affirmatively shows that the allegations contained in the complaint against the respondent herein, with reference to the alleged bribery of the said J. W. Clark, are wholly false and untrue.

### III.

"For further answer to said complaint, respondent, Hugh A. Ledbetter, denies that he has orally stated and published to divers and sundry citizens, that Honorable Geo. M. Nicholson, former Chief Justice of this court, and other judges of this state have accepted bribes, and that he, the said Hugh A. Ledbetter, by means of employing detectives, discovered evidence incriminating judges of courts of this state, and that the said respondent further denies that he has published to divers and sundry individuals of this state, that by means of such discovery he has been successful in intimidating the judges of said courts by means of having acquired information and evidence tending to prove official corruption and bribery, thereby coercing judges of said courts into determining controversies in his favor, regardless of the merits of said causes; and respondent denies that he ever at any time made or published any false or untrue statement of any kind involving misconduct on the part of any of the judges of the courts of this state.

"This respondent further denies that as one of the counsel for H. B. Martin in cause No. 18080, while examining the said H. B. Martin under oath, committed the offense of subrogation of perjury, and denies that by direct, leading, and suggestive questions he elicited from said H. B. Martin the statement that he, Hugh A. Ledbetter, had stated and advised the said H. B. Martin that two of the members of this court, Justices C. W. Mason and Fletcher Riley, had been seen by him in the city of Ardmore in September, 1926, in the presence of another member of this court in a drunken, intoxicated, and riotous condition; and this respondent further denies that he elicited any such testimony while examining the said Martin, for the wicked and malevolent purpose of causing the same to be published in the press of the state so that the confidence and respect of the public for this court might be impaired and destroyed, and malevolently and unjustifiably injected offensive personalities tending to reflect upon the members of the court.

"Respondent respectfully calls the court's attention to the transcript of the evidence in cause No. 18080 on the docket of this court, wherein the testimony referred to in said complaint is set forth in full, and now states to this honorable court that the said transcript shows conclusively that this respondent elicited no such testimony from the said H. B. Martin, and that he, in fact, did not examine the said H. B. Martin with reference to said matters in any respect whatever, but, on the contrary, the testimony referred to was elicited during the course of the examination of the said Martin by the attorneys representing the prosecution in said cause, and hence, said respondent says that nothing contained in the testimony of the said H. B. Martin on that subject should be considered against him in this proceeding.

'This respondent states that he will file a transcript of said testimony with this answer as soon as the same can be made, and asks the court to consider the same in connection with the allegations contained in said complaint.

"This respondent further denies that he ever made any statement to any member of this court, or to any other person, with the intention or expectation that the statements so made would be published in the press of the state to the injury or detriment of this court; and that he never, at any time, caused to be published in any newspaper in the state any statement or representation made by him with reference to any member of the court. .

"And, now having fully answered herein, this respondent respectfully prays that the complaint against him be dismissed.

"(Signed) Hugh A. Ledbetter, Respondent.

"(Signed)
"H. E. Ledbetter,
"W. A. Ledbetter.

"Attorneys for Respondent.

"State of Oklahoma, Oklahoma County, ss.

"I, Hugh A. Ledbetter, respondent in the above and foregoing cause, being duly sworn, on oath state that each and every allegation contained in the above and foregoing answer is true.

"(Signed) Hugh A. Ledbetter.

"Subscribed and sworn to before me this 26th day of May, 1927. (Seal)

"L. Y. Wyatt, Notary Public.
"My commission expires Sept. 23, 1930."

Upon the filing of said answer same was considered by the court, and on the same day, to wit, May 27, 1927, the respondent was ordered to make his answer more definite, particular, and certain in this, to wit:

"That the respondent set out in the answer or response whether or not he told Mr. H. B. Martin that he paid Justice J. W. Clark $750, or any other sum of money, and if he

did tell him that, to set out the time, giving the date, or dates, when he gave the money to Justice Clark and the place where it was given, and if he took a receipt, as is alleged in Martin's affidavit filed in this court, that he set out a copy of that receipt or the original, preferably the original, but at least a copy of the receipt."

Thereupon respondent, by his counsel, requested further time within which to prepare and file amended answer and was granted until June 3rd to do so, and the cause was set for hearing on the merits on June 8th.

Thereafter, on June 4, 1927, pursuant to order of the court, respondent filed herein his amendment to answer as follows:

"In the Supreme Court of the State of Oklahoma.

"State of Oklahoma ex rel. Edwin Dabney, Attorney General, Petitioner, v. Hugh A. Ledbetter, Respondent. No. 18323.

"Amendment to Answer Filed in Response to the Order of Court Made on the 27th Day of May, 1927.

"Now comes the respondent, Hugh A. Ledbetter, and in compliance with the order of this court made the 27th day of May, 1927 requiring him to make his answer more definite, particular and certain, states that he did tell H. B. Martin that he had raised and turned over to Justice J. W. Clark a short time after the August primary of 1926, the sum of $750 to be used in the Democratic campaign then in progress in the state of Oklahoma, but this respondent is unable to state whether or not in his conversation to H. B. Martin he designated the date on which he represented that said sum of money was delivered to the said Justice J. W. Clark.

"This respondent further states that a short time after the Democratic primary in August, 1926, he raised the sum of $750 in compliance with an arrangement between himself and the said Justice J. W. Clark, with the expectation and intention of turning the same over to the said Justice Clark to be used for campaign purposes, but the said Justice J. W. Clark informed this respondent that he could not accept the same. The said Justice Clark never at any time gave the said respondent any receipt for any money whatever.

"In explanation of the foregoing statement this respondent states that sometime during the early part of January, 1927, he was employed to help defend O. O. Owens and H. B. Martin, in certain proceedings pending in this court, wherein the said O. O. Owens and H. B. Martin were charged with contempt of court, and between his employment and the trial of said Martin on the said contempt proceedings, this re-

spondent was suffering from great nervous prostration and extremely painful infection known as sinus trouble, which caused him to suffer excruciating pain, and during said time, to relieve himself from such pain and suffering, this respondent unfortunately indulged in the excessive use of intoxicating liquors, and under that influence, without intending that the statement would ever become public, he told the said Martin that he had delivered to said Justice J. W. Clark said sum of $750, and taken his receipt therefor; that later on in the progress of said contempt proceedings this respondent repeated said statement to H. B. Martin in a private, confidential conversation without the least thought or intention that the statement would ever be published, or incorporated by the said H. B. Martin in any affidavit or motion in this or any other court.

"This respondent further states that in no conversation which ever took place between him and the said Justice J. W. Clark, or between him and any other member of this court, he ever made any improper suggestion with respect to any matter pending before the court, and in all conversations which ever took place between him and Justice Clark or any other member of this court he observed the utmost propriety.

"(Signed)    Hugh A. Ledbetter.

"State of Oklahoma, Oklahoma County, ss.

"I, Hugh A. Ledbetter, respondent in the above cause, after being sworn on oath, do say that the allegations contained in the above and foregoing amendment to the answer heretofore filed in the above cause are true.

"(Signed)    Hugh A. Ledbetter.

"Subscribed and sworn to before me on this the 30th day of May, 1927.

"(Signed)    Glessner Geery, Notary Public, Oklahoma County.

"(Seal)

"My commission expires Dec. 3, 1929."

Thereafter, on June 8th, this cause was called for trial, and respondent appeared by his counsel, W. A. Ledbetter, and filed motion for continuance on account of illness of respondent. Upon consideration of said motion same was sustained and the cause continued until June 27, 1927, at which time order was entered suspending respondent from the practice of law and as an attorney at law until the further order of the court. Thereafter, and on June 21, 1927, respondent filed, with leave of court, his second amended answer as follows:

"In the Supreme Court of the State of Oklahoma.

"The State of Oklahoma ex rel. Edwin Dabney, Attorney General, Petitioner, v. Hugh A. Ledbetter, Respondent. No. 18323.

~Second Amended Answer of the Respondent, Hugh A. Ledbetter.

"Now comes Hugh A. Ledbetter, respondent in the above styled cause, and after having obtained leave of the court, files this, his second amended answer, in lieu of the original answer, and the amendment to his original answer filed in response to the order of the court made on the 27th day of May,1927, requiring him to make his answer more definite, particular and certain; and also in lieu of the explanatory statement filed by him with reference to the third paragraph of his original answer.

"First. This respondent admits that for a long time he has been, and alleges that' he is now a duly and legally licensed attorney at law under the Constitution and laws of the state of Oklahoma, and has been for the past 29 years engaged in the practice of law with offices at Ardmore, Okla.; and this respondent admits that by reason of his license to practice law issued to him by the United States Court for the Indian Territory before the admission of Oklahoma into the Union and confirmed by the Constitution and laws of the state, and the oath taken by him, as required by law, this respondent is now, and has been at, all times hereinafter mentioned an officer and member of the bar of this court.

"Second. That said Hugh A. Ledbetter, respondent, denies generally all the allegations contained in said complaint charging that he has been guilty of conduct unbecoming an officer of this court and an attorney at law, and denies that he has at any time violated his oath of office as an attorney at law, or that he has violated or breached the duties imposed by law upon an officer of this court, and the said respondent specifically denies that he is now or has been for a long period of time engaged in a vindictive, malicious, systematic and continuous scurrilous attack upon this court, or other courts, seeking by false statements and aspersions to cast reflections upon the court, destroying the confidence and respect of the public for this and other courts.

"Third. With respect to the first specific act of misconduct alleged against this respondent, wherein it is charged that he stated and advised H. B. Martin that he, the said respondent, had bribed the Honorable J. W. Clark, one of the members of this court, by giving the said J. W. Clark $750 and taking a receipt therefor, the object, purpose and intent of such action being to improperly obtain from said J. W. Clark an opinion favorable to the interests represented by said Hugh A. Ledbetter in a cause then pending in this court, this respondent states that said charge is wholly false and untrue, and he denies most emphatically and positively that he ever at any time told the said H. B. Martin that he had bribed the said Justice J. W. Clark by giving him $750

to improperly obtain from said Clark an opinion in a cause pending in this court, and he alleges that the subject of bribing said Justice Clark, or improperly influencing him in any cause pending in this court, was ever mentioned or discussed in any conversation between this respondent and said Martin.

"Fourth. With reference to that part of said complaint wherein it is charged that this respondent made the aforesaid false representations to the said H. B. Martin for the malevolent, wicked and foul purpose on the part of this respondent to give unto the said H. B. Martin colorable cause to incorporate at length the said scandalous, defamatory and scurrilous statements in an affidavit or motion for continuance to be prepared and filed by the said H. B. Martin in case No. 18080 pending before this court, and wherein it is charged that this respondent, designing, knowing and intending that said false statements would be so incorporated in an affidavit or motion, and that the same would be published in the newspapers of this state, thereby causing such sensational, scandalous, vicious, scurrilous and defamatory false charges to be conveyed to the citizens of this state to the end that the confidence and respect of this court, and other courts, would thereby be destroyed, this respondent states: That each and every part of the aforesaid charge against him is false and untrue, that he never at any time made any such statement to the said H. B. Martin to be incorporated by the said H. B. Martin in an affidavit to be filed in case No. 18080 pending in this court; that he never at any time consulted with the said H. B. Martin about filing a motion for a continuance in said case, or filing an affidavit of any kind in support of said motion for continuance; that at the time said motion for continuance was filed by the said H. B. Martin in cause No. 18080, this respondent was in Dallas, Tex., under treatment of a physician for a serious and dangerous malady; that he has not been in Oklahoma City, or in any way consulted with said Martin, for the past ten days or more, and that he has never consulted with said Martin about the filing of said motion since that time.

"This respondent further denies in the most definite and certain terms that he had anything to do with the publication of the contents of said affidavit or motion in the newspapers of the state, and alleges that he never at any time discussed the contents of said affidavit or motion with any reporter, editor, or other person in any way connected with any of the newspapers in the state of Oklahoma, or elsewhere, and that, as a matter of fact, this respondent never saw the affidavit or motion of H. B. Martin or knew anything about their contents for many days after the same were prepared or filed, and this respondent alleges that if the confidence and respect of the public in this honorable court has been in any way impaired by the

publication in the newspapers of the state of what was stated to be the contents of the affidavit filed by Martin in said cause No. 18080, the responsibility therefor does not rest in any respect whatever upon this respondent, and this respondent disclaims and denies that any blame should be attributed to him for the publication of any statement or misstatements in the newspapers of the state of the contents of the aforesaid affidavit of the said H. B. Martin.

"Fifth. This respondent respectfully calls the court's attention to the fact that the affidavit of H. B. Martin filed in cause No. 18080 on the docket of this court, is attached to and made a part of the complaint filed against this respondent, and thereby the contents of said affidavit of H. B. Martin were incorporated into and made a part of the complaint against this respondent, and this respondent alleges that this court, under the law, must take cognizance of the contents of said affidavit, and must judicially know that the charge that the alleged false and untrue statements attributed to respondent was made in order that the same might be incorporated in an affidavit or motion to be filed in this court by the said H. B. Martin, is completely refuted, abrogated and destroyed by the contents of said affidavit, for the reason that said affidavit so filed by the said Martin does not state that this respondent told H. B. Martin that he had bribed said Justice J. W. Clark by giving him the sum of $750 to improperly obtain from said Clark an opinion favorable to the interests represented by this respondent in a cause then pending in this court, but on the contrary the affidavit of said Martin states that said sum of $750 was to be raised 'for the use and benefit of said Clark in his pending campaign' (meaning the campaign of the said J. W. Clark as a candidate for Justice of the Supreme Court of the state of Oklahoma; and this respondent hereby pleads the said affidavit of the said H. B. Martin as a complete bar against any action of this court against this respondent based on the charge aforesaid.

"Sixth. This respondent further states that he did tell H. B. Martin that he had raised and turned over to said Justice J. W. Clark a short time after the August primary of 1926, the sum of $750 to be used in the Democratic campaign then in progress in the state of Oklahoma, but this respondent is unable to state whether or not in his conversation with said H. B. Martin he designated the date on which he represented that said sum was delivered to said Justice J. W. Clark.

"This respondent further states that a short time after the primary in August, 1926, he raised the sum of $750, with the expectation and intention of turning the same over to the said Justice Clark to be used for campaign purposes, but that said Justice Clark informed this respondent that he could not accept the same, and for that reason the same was not turned over to the said Justice J. W. Clark, and the said Justice Clark never at any time gave this respondent any receipt for any money whatever.

"In explanation of the foregoing statement this respondent states that sometime during the early part of January, 1927, he was employed to help defend O. O. Owens and H. B. Martin in certain proceedings pending in this court, wherein the said O. O. Owens and H. B. Martin were charged with contempt of court, and between his employment and the trial of said Martin on the said contempt proceedings this respondent was suffering from great nervous prostration and extremely painful infection known as sinus trouble, which caused him to suffer excruciating pain, and during said time, to relieve himself from such pain and suffering, this respondent unfortunately indulged in the excessive use of intoxicating liquors, and under that influence, without intending that the statement would ever become public, he told the said Martin that he had delivered to said Justice J. W. Clark said sum of $750, and taken his receipt therefor; that later on, in the progress of said contempt proceedings, this respondent repeated said statement to H. B. Martin in a private, confidential conversation without the least thought or intention that the statement would ever be published, or incorporated by the said H. B. Martin in any affidavit or motion in this or any other court.

"This respondent further states that in no conversation which ever took place between him and the said Justice J. W. Clark, or between him and any other member of this court, he ever made any improper suggestion with respect to any matter pending before the court, and in all conversations which ever took place between him and Justice Clark, or any other member of this court, he observed the utmost propriety.

"Seventh. For further answer to said complaint, respondent, Hugh A. Ledbetter, denies that he has orally stated and published to divers and sundry citizens that Honorable George M. Nicholson, former Chief Justice of this court, and other judges of this state, have accepted bribes, except in the case of one district judge in this state, as hereinafter admitted and explained; and this respondent further denies that he has orally stated and published to divers and sundry citizens, that by means of employing detectives, he has discovered evidence incriminating judges of the courts of this state, except as hereinafter set forth; and the said respondent further denies that he has published to divers and sundry individuals in this state that by means of any such discovery he has been successful in intimidating judges of said court by means of having acquired information and evidence tending to prove official corruption and bribery, and thereby coerced judges of said court

into determining controversies in his favor regardless of the merits of said causes; and this respondent denies that he ever at any time made or published any false or untrue statement of any kind involving misconduct on the part of any of the judges of the courts of this state. but this respondent does state that while a certain case in which he was employed in the district court of Carter county, Okla., and in the interim between the trial of the case and the time when final judgment was entered therein, he became suspicious about the conduct of the judge before whom said case was being tried, and caused an investigation to be made by a detective, which investigation corroborated the suspicions of this respondent as to the corrupt conduct of said judge: that he had detailed the facts concerning said investigation and conduct of said judge in many conversations, and to certain public officers in the state, for all of which this respondent assumes full and complete responsibility; that that district judge was defeated for the Democratic nomination for the office of district judge at the primary in August, 1926, and since that time has permanently left the state of Oklahoma.

"Eighth. This respondent denies that as one of the counsel for H. B. Martin in case No. 18080, while examining the said H. B. Martin, as a witness in said cause, under oath, he committed the offense of subornation of perjury; and denies that by direct, leading and suggestive questions he elicited from said H. B. Martin the statement that he, Hugh A. Ledbetter had stated and advertised to the said H. B. Martin that two of the members of this court, Justices C. W. Mason and Fletcher Riley, had been seen by him in the city of Ardmore in September, 1926, in the presence of another member of this court in a drunken, intoxicated and riotous condition, and this respondent further denies that he elicited any such testimony while examining the said Martin for the wicked, malevolent purpose of causing the same to be published in the press of the state so that the confidence and respect of the public for this court might be impaired and destroyed. malevolently and unjustifiably injecting offensive personalities tending to reflect upon the members of this court.

"Respondent respectfully calls the court's attention to the transcript of the evidence in case No. 18080 on the docket of this court, wherein the testimony referred to in said complaint is set out in full, and now here states to this honorable court that the transcript shows conclusively that this respondent did not examine H. B. Martin as a witness in said cause, and that he did not elicit from said Martin any statement whatever, but, on the contrary, the testimony or statement referred to was elicited during the cross-examination of said H. B. Martin by Honorable Charles B. Cochran, one of the attorneys for the prosecution, and that

nothing contained in the testimony of said H. B. Martin on said subject should be considered against respondent in this proceeding.

"Respondent especially calls the court's attention to the fact that this court, under the law, takes judicial notice of the transcript of the evidence in said cause and of the cross-examination of said H. B. Martin, by said Cochran, as disclosed in said transcript, and that said transcript, beginning at page 440 of the record in said cause, is as follows, to wit:

"Q. Mr. Owens, in detailing the matters which he had detailed to you, detailed as a fact that Mr. H. A. Ledbetter had stated that Justices Riley and Mason were drunk at the Legion Convention in Ardmore—you heard that statement?

"A. I heard that sort of a statement, yes, sir.

"Q. Mr. H. A. Ledbetter is alleged to have made that statement and is here in the courtroom?

"A. He is here.

"Q. Do you expect to introduce any evidence tending to substantiate that statement?

"A. I don't wish to answer that question, now, your Honor.

"Mr. Moss: I will answer it for him as his counsel. We do not.

"A. I am not sure that that answer will be conclusive.

"Mr. Moss: It will be as far as I am concerned.

"Q. I am anxious for the witness to answer for it makes a very material difference in this case.

"Justice: The witness says that he is not sure, and I am sure- I presume he doesn't know.

"Justice: I think he has answered the question.

"Mr. Ledbetter: I think, if the court please, that Mr. Justice Riley has already investigated the question in Carter county, and in consideration of that fact that he has investigated the question in Carter county last week, or had it done through the sheriff or others. The reason you ask the question is so that you mix the witness up here, is that correct?

"Mr. Cochran: I want to know whether you are going to attempt to prove the truthfulness of that witness.

"Chief Justice: The witness has answered, he don't know. Proceed.

"Mr. Cochran: All right.

"Q. Have you ever asked Mr. Ledbetter

relative to the facts in regard to that matter?

"A. Yes, I don't believe I asked him either, but I believe he told me and Justice Phelps was present and called attention to the intoxication of these gentlemen.

"Q. I want to know if you are familiar with Mr. Ledbetter's position regarding that matter?

"A. I tried to answer the question. I believe Mr. Ledbetter told me.

"Q. And you are not at this time prepared to say whether you expect to offer testimony tending to establish that issue?

"A. No, sir. However, that information never came to me at all until after I had drawn this motion.

"Q. That opinion then had nothing to do with your good faith or lack of good faith in filing this motion?

"A. No, I didn't know it at the time, and I didn't have it in my mind.

"Q. And that personal attack which has been made upon these two justices in your opinion has no particular place in this record?

"A. I couldn't say that; I think it does have a place because public intoxication of Judges of the Supreme Court may have a bearing upon the issues that are to be tried in the Riverside Case.

"Q. It certainly has no bearing on the question of the issues which are joined in this motion and in this proceeding, does it?

"A. I doubt if it has any; I don't believe it has.

"Q. Now, Mr. Owens, he further testified in regard to the Spring Lake episode."

"This respondent further calls attention of the court to the fact that nowhere in said transcript is there shown any other cross-examination of said H. B. Martin on the subject referred to, and said transcript therefore affirmatively shows that this respondent never had anything on earth to do with eliciting from the said H. B. Martin the alleged false and slanderous statements with reference to Justices Mason and Riley at Ardmore in September 1926, or at any other time, and this respondent hereby pleads the transcript in said cause as a full and complete refutation of, and answer to any and all charges or complaints against him with respect to Justices Mason and Riley.

"Ninth. With respect to the publication in the newspapers of the state, of the contents, or the misrepresentations of the contents of the affidavit of H. B. Martin referred to in the complaint against this respondent, and with respect to all other matters concerning this controversy published in the newspapers of the state, this respondent denies that he ever, at any time, caused the publication in the newspapers of the state, of any fact or statement concerning this controversy; and he denies that he ever at any time discussed any fact or circumstances connected with the entire controversy with any reporter, editor, or other person in any way connected with any newspaper published in this state, or elsewhere; but this respondent states that for some unknown reason a number of the leading newspapers in the state during a period of more than six weeks, almost daily published untrue and libelous statements concerning the affidavit of H. B. Martin and the statements made by this respondent to H. B. Martin, thereby creating an erroneous and false impression about the conduct of this respondent, to his great detriment and injury, but this respondent alleges that he is not in any way responsible for the publication of such false, slanderous misstatements by the newspapers of the state of the contents of the affidavit of said H. B. Martin, or of the statements made by this respondent to H. B. Martin.

"Tenth. This respondent, for further answer to the charges against him herein, states that he has practiced law in Oklahoma and in the territories composing the state of Oklahoma, for 29 years, and during all that time he has been diligent and industrious in all matters wherein his professional services were engaged; that he always remained faithful to his clients, and has been respectful to all courts in which he has practiced; that he has built up a large and lucrative practice, and accumulated a large library and office equipment; that his license to practice law in Oklahoma is of great value to him, and that in legitimate fees his annual income ranges from $12,000 to $25,000 per annum; that he is now 50 years of age, and that in the ordinary course of events, he would be able to practice law successfully during the next 15 or 20 years, and that to disbar him at the present time and deprive him of the right to practice law would cause him injury and damage, at least to the extent of $200,000.

"This respondent further states that since the order of this court temporarily suspending his license to practice law was made, he has suffered injury and damage in the sum of several thousand dollars by reason of the fact that he has been compelled to give up a number of employments, and to refuse to accept other employments offered him in important litigation pending in the courts of this state.

"And, now, having fully answered, this respondent prays that the charges against him be dismissed, and that he be fully acquitted and exonerated from the charges of misconduct alleged against him; and that

the order heretofore made in this cause temporarily suspending him from the practice of law, be vacated and set aside; and that he have all other relief to which he may be entitled.

"(Signed)    H. A. Ledbetter, Respondent.
"H. E. Ledbetter,
"W. A. Ledbetter,

"Attorneys for Respondent.

"State of Oklahoma, Oklahoma County, ss.

"I, Hugh A. Ledbetter, after being sworn on oath do say that the allegations and the statements contained in the above and foregoing second amended response, which are alleged to be true, are true, and those allegations which are alleged to be true upon information, I believe to be true.

"(Signed)   Hugh A. Ledbetter.

"Subscribed and sworn to before me this 18th day of June, A. D. 1927.

"(Signed)    Mary S. Broadwell,
"Notary Public.
" (Seal)
"My commission expires March 24, 1928."

Thereafter, and on June 27th, this cause was duly called for trial, the respondent appearing in person and by his counsel, Honorable W. A. Ledbetter and Honorable H. E. Ledbetter, and trial was had before this court with all members sitting except Justice Heffner, who was absent and who has not participated herein. Thereafter respondent also filed herein, on July 13th summary and brief, and while this case was not formally assigned to the writer until September 10. 1927, same has, because of its supreme importance, as we view it, received the most careful, thorough, and deliberate consideration of every member of this court participating herein from its very inception. We deem it advisable to set out in full herein the various pleadings and proceedings in this case because of the importance of the matter not only to the respondent and to this court, but to the bar and the people of this state as well and because our conclusion herein is based largely on the admissions of respondent as contained in his pleadings.

We realize full well that we have a duty to respondent herein, as well as to the state, whose sworn officers we are, and we enter upon the consideration and discussion of this matter imbued with but one desire and one idea, that of reaching a right conclusion herein and rendering proper judgment thereon without fear or favor, and when we have done so, our duty to all concerned will have been fully discharged. The conclusion reached herein, therefore, represents the calm and deliberate judgment of this court and reflects its desire and purpose to measure up to its responsibility and do its full duty in matters of this kind as well as all others, unpleasant and distasteful though it may be at times.

The authorities are uniform in holding that the action of the court in the exercise of its power to disbar is judicial in character and the real question for determination in such proceedings is whether or not the attorney is a fit person to be longer allowed the privilege of being an attorney. In our consideration of this matter, we shall keep in mind that the power is not an arbitrary and despotic one to be exercised at the pleasure of the court or because of passion, prejudice, or personal hostility, but is rather one to be used with moderation and caution in the exercise of a sound judicial discretion and only for the most weighty reasons and upon clear legal proof. While in this state this proceeding is authorized by statute, the particular sections having been hereinabove referred to, it is well settled that a court authorized to admit an attorney has an inherent jurisdiction to suspend or disbar him for sufficient cause, and it is equally well settled that it not only has the power, but whenever a proper case is made out, it is its duty to exercise it. Ex parte Burr, 1 Wheeler's C. C. (N. Y.) 503; also 9 Wheat. 592; Ex parte Wall, 107 U. S. 265.

The complaint herein charges, first, general misconduct on the part of respondent as therein set out. No evidence was introduced in support of this general charge and same will therefore be dismissed.

Also, as to the second specific charge of misconduct, to wit, that respondent has orally stated and published to divers and sundry citizens that the Honorable George M. Nicholson, former Chief Justice of this court, has accepted bribes, same was denied by respondent under oath, and no evidence was offered in support thereof, and this charge will likewise be dismissed.

The third specific charge of misconduct is that respondent committed the offense of subornation of perjury in the trial of one H. B. Martin on a charge of contempt in cause No. 18080 in this court. This is indeed a most serious charge, and if true would of itself be sufficient, not only to warrant this court in disbarring respondent, but would also subject him to criminal prosecution. It should therefore be sustained by a very high degree of proof, and while there was some evidence introduced on this charge. it refutes rather than sustains the specific charge of subornation of perjury, and same will therefore be dismissed.

Under all the facts as disclosed by the record, the one remaining charge is the most serious one with which we have to deal, being that involving the conduct of respondent as set out in the affidavit of H. B. Martin attached to and made a part of the complaint as exhibit "A." We not only heard the testimony of all the witnesses who testified in this cause, but have also carefully read the entire record, and are forced to the conclusion that the substance of this charge is abundantly sustained by the evidence, as will more fully hereinafter appear.

Further, entirely aside from the evidence offered to sustain this charge, the answers of respondent filed herein and the testimony of his counsel herein, Honorable W. A. Ledbetter, admit, in our judgment, most serious misconduct on the part of respondent and a flagrant disregard of his duties as an attorney. Said testimony being as follows: W. A. Ledbetter, counsel for respondent, offered himself as a witness, and after being duly sworn testified as follows:

"Mr. Ledbetter: I desire to state that I was present in H. A. Ledbetter's room on one occasion, I think it must have been after Judge Clark had testified and the question of the payment of the $750 to Judge Clark—it was under discussion.

"H. A. Ledbetter, in connection with some inquiry that was made, stated that he had raised this money for Judge Clark, and that he had brought it up here and paid it over to him. Someone suggested that he has got a receipt for it, and my recollection is that H. A. Ledbetter acquiesced in that statement that he had a receipt for it.

"Later on, when charges in the disbarment proceedings were filed against him, I felt it my duty to help him out, and I went to see him about it, and I expected him to produce the receipt. He did not do it. A short time afterwards, possibly about the time the court ordered him to make his answer more definite and certain, I went to Ardmore and told him I wanted to see everything he had in the way of records.

"Justice Lester: Just a little louder, please.

"W. A. Ledbetter: I say, I told him I wanted to see everything he had, and it was then that he told me that he had never paid this money to Mr. Clark; that he had no receipt for it from him. I came back up here and I went to see Judge Clark. Judge Clark was reluctant to discuss the matter with me at all, but I told him that I wanted to hear his statement of what had occurred, and after hearing his statement, why, I came to the conclusion that H. A.

Ledbetter had never paid him the money; that he had no receipt, and it was the result of those conferences that the answer was filed which speaks the truth in this case.

"Now, I want to state, notwithstanding the principal statements of Mr. Martin and Mr. Moss and Mr. Russell, for more than a month before that time and during this trial, H. A. Ledbetter was in a deplorable condition physically, and that he frequently drank whisky. On the occasion when I was in his room there was two quarts of whisky there, and while he was not visibly riotous, or anything of that sort, he was under the influence of intoxicating liquor.

"Now, I am going to take the liberty to give you what I think is the fact about this outside of the record, and that is that when H. A. Ledbetter brought this money up here, without intending it would ever get out to the public, and after Mr. Justice Clark had declined to take it, that he either gambled that money away, or at any rate without expecting the matter would come to the public in any way in the world, he made the statement that he had paid it over to Mr. Clark in accordance with his arrangement, but that he had not done it. He got committed to that proposiion, and not thinking it would ever come before the court, he told these gentlemen that he had paid it. That is, I give you that outside of the actual statement of the facts, and I think that whatever error or wrong that he has done Justice Clark by merely stating it to these gentlemen, why, he ought to answer for it, but not beyond that, because he never did intend that what he said would be testified to, and that he would never testify to it. I make this statement to the court because of the fact that it was stated that I was present on that occasion.

"I would be glad to answer any questions that any member of the court desires to ask me.

"Chief Justice: Has anybody any questions to ask Judge Ledbetter?

"All right, Judge; you may step aside."

It is true, the complaint charges that "respondent advised one H. B. Martin that he, the said Hugh A. Ledbetter, had bribed Justice J. W. Clark, one of the members of this court, by giving to said J. W. Clark $750 and taking a receipt therefor, the object, purpose, and intent of said action being to improperly obtain from said J. W. Clark an opinion favorable to the interest represented by the said Hugh A. Ledbetter in a cause then and there pending in this court." The evidence discloses that respondent did not in fact claim to have bribed Justice Clark, but that he did claim to have raised the sum of $750, which he turned over to

Justice Clark for use in his campaign for re-election as a member of this court. See paragraph 6 of respondent's second amended answer, hereinbefore set out.

It further appears from the testimony of Mr. Martin that at the same time respondent told him of the alleged campaign fund contribution respondent told him of an important case in which he appeared as counsel for one of the parties which he had learned had been assigned to Justice Clark for an opinion; that he had often talked to Judge Clark about same; that Justice Clark had shown him the opinion; that he had read part of it, and that Justice Clark had told him he did not wish to hand it down until after the election.

Respondent, though present in court, did not take the stand, and this testimony stands undenied and must be taken as true, and when considered in connection with respondent's admission that he told Mr. Martin he had raised $750 and turned same over to Justice Clark for campaign expenses, is susceptible of but one construction, to wit, a desire on the part of respondent, to convey to Mr. Martin the impression that Justice Clark had been guilty of serious misconduct in the case in which respondent was interested, and of course leave the inference that he might engage in like practice in other cases, and that he was therefore utterly unfit to serve on this court. That respondent was fully conscious of his own misconduct in this matter is revealed in the following excerpt from a letter which he wrote Mr. Martin from Dallas, Tex., under date of April 27, 1927, in which he advised Mr. Martin that he was sending him by express his "wallet" (brief case) containing certain correspondence pertaining to this matter:

. "I am eliminating all matters which have reference to the campaign fund and this for at least two reasons, the first of which is that Wirt Franklin does not want to be called into this matter and he has requested that I eliminate his name from the same; second reason is that a criminal statute may have been violated and I would not like to give in testimony matters which would seek to incriminate myself and Mr. Franklin. (On this latter point I know you would agree with me.)"

Showing conclusively, we think, that respondent, being a lawyer and knowing full well just what his conduct had been, realized it might even be made the basis of a criminal prosecution.

Of course, respondent now completely and thoroughly exonerates Justice Clark of any misconduct and offers in explanation of his statements to Mr. Martin, first, that they were made at a time when he was suffering from serious physical ailments and was in a highly nervous condition and because of same resorted to the frequent and excessive use of intoxicating liquors and was under the influence of liquor at the time he made the statements to Mr. Martin which he now admits were untrue; and, second, that same were made to Mr. Martin in private conversation and he had no idea or intention that same would ever be made public, and his brother, Honorable W. A. Ledbetter, an honored and respected member of the bar of this state and a useful and distinguished citizen, after testifying as hereinabove set out, that in his judgment respondent had brought the money up here which he claims he had raised for Justice Clark's campaign and had gambled it away, but notwithstanding that fact made the statement that he had paid it over to Justice Clark, which he had not done, concludes his testimony by stating that respondent ought to answer for whatever wrong he had done Justice Clark.

In this connection we feel impelled to say this proceeding was not instituted to correct or avenge any wrong or injury which might have been suffered by Justice Clark, though as counsel for respondent admits, he appears to have been greatly wronged by respondent. The greatest wrong done, though, and the one in which we of necessity are particularly interested is that done Justice Clark, not individually, but as a member of this court, and through him the court itself as an instrumentality of government, which it is our sworn duty to protect. Respondent's serious offense, then, is his utter disregard of his oath as an attorney and duty to the court as an officer thereof.

Respondent, through his counsel, states this is his first offense and cites us to his 29 years' experience as a member of this bar during which time he has enjoyed a large and lucrative practice, and offers the testimony of men high in the profession in this state, some of whom have served on this court and as district judges in the district where respondent lives and the districts adjacent thereto, as to his high standing as a lawyer and his zeal for his clients. These facts are not denied and are in our judgment all the more reason respondent should not have been guilty of that which stands admitted in this record. He should have known better. He did know better, and should therefore be held to strict ac-

127—4

countability, and while we are willing to accept respondent's statement as to his physical condition and the circumstances under which he committed the offense herein under consideration, yet we cannot overlook the fact, as appears from the testimony, that on more than one occasion respondent made the statements which he now admits to have been false. The uncontradicted testimony on this point being that they were made in numerous conversations and conferences had by respondent with the witnesses Martin, Moss, and Russell, beginning as early as November, 1926, according to Mr. Martin's testimony, and extending on up to about the date of the letter hereinabove referred to. It is significant also that the witnesses who testified as to respondent's previous good standing as a lawyer without exception made it plain they were excluding this matter from consideration in giving their testimony and that they would not undertake to justify or excuse respondent's conduct as disclosed by the record herein.

The brief filed herein by respondent, through his counsel, expresses the hope that:

"The court will find an extenuating circumstance in the mental and physical condition of the respondent described in the testimony of these witnesses."

Conceding same to be an extenuating circumstance, yet it is not sufficient to exonerate respondent from responsibility for his admitted misconduct herein, for in our judgment the record conclusively establishes, and we so find, that respondent was thoroughly at himself and in full possession of all his faculties and in fact was engaged actively in the conduct of the cases in which he was employed as cocounsel with Messrs. Martin, Moss, and Russell, all of whom testified in this case, when he committed what he terms the "one error" and for which he now offers to apologize to Justice Clark and to this court.

He further argues that by reason of his physical condition he had resorted to the excessive use of intoxicating liquor and made the statements upon which this charge was based while under the influence of liquor. The evidence does not support this assertion, but, even if same were true, we feel it would be unsafe and unwholesome to lay down the rule that voluntary intoxication as herein pleaded is a defense in cases of this kind, or that same would even be considered in mitigation or excuse.

Respondent contends that he has already been severely punished and he should therefore not be disbarred, citing volume 2, Thornton on Attorneys at Law, at page 1316, wherein it is stated:

"It is the generally accepted principle, however, that since the primary purpose of the disbarment proceeding is not punishment, but the protection of the courts and public, disbarment should never be decreed if any discipline less severe would accomplish the desired result, as when there are prospects that the attorney's conduct and character may have undergone reformation."

As above stated, the primary purpose of disbarment is not punishment of the attorney, but for the purpose of preserving the courts of justice from the official ministration of persons unfit to practice in them.

In re Shepard, 109 Mich. 631, 67 N. W. 971, lays down the rule as follows:

"This is not a proceeding by way of punishment, though the deprivation of the privileges of an attorney may be a matter of serious importance to a practitioner. It is a measure necessary to the protection of the public, who have a right to expect that courts will be vigilant in withholding, and, if already given, withdrawing, their certificates of qualification and character, upon which the public rely."

We really feel the citation of authorities to support our conclusions herein is wholly unnecessary, but we have examined a large number of disbarment cases, which we have found very helpful in our consideration of the instant case, some of which will be cited and quoted from on the question as to the duty of the court and the proper judgment to be rendered. We find in Re Shepard, supra, a quotation from In re Mills, I Mich. 395, as follows:

"Should this court, after being officially advised that one of its officers has forfeited the good name he possessed when permitted to assume the duties of his office, still hold him out to the world as worthy of confidence, they would in my opinion, fail in the performance of a duty cast upon them by the law. It is a duty they owe to themselves, to the bar, and the public, to see that a power which may be wielded for good or for evil is not intrusted to incompetent or dishonest hands. The extreme judgment of expulsion is not intended as a punishment inflicted upon the individual, but as a measure necessary to the protection of the public, who have a right to demand of us that no person shall be permitted to aid in the administration of justice whose character is tainted with corruption."

Thus is our duty in the instant case clearly defined, and likewise in Re Platz, 42

Utah, 439, 132 Pac. 390, wherein the contention was made that merely to suspend respondent would be sufficient, we find the following language:

"We have very carefully read and considered all of the evidence adduced, both in support of and against the charges, and we are firmly convinced that both the findings of fact and conclusions of law based thereon are not only supported by the evidence, but are established beyond a reasonable doubt. In our judgment the evidence, which is contained in more than 300 typewritten legal cap pages, leaves no room for doubt that the respondent's acts and conduct were such as make him morally an unfit, unsafe, and improper person to be intrusted with the powers of an attorney at law, and hence he should be disbarred. In arriving at this conclusion we are not unmindful of respondent's argument advanced at the hearing that merely to suspend him would be sufficient punishment. This contention entirely ignores the real purpose of disbarment proceedings. In such proceedings, where the specifications, as in this case, directly charge the attorney with acts and conduct which clearly are to the effect that he does not possess the necessary attributes of honesty, integrity, and fidelity to entitle him to continue to practice his profession, the purpose of disbarring him from following the vocation of an attorney at law is not to punish him, but it is to protect 'the public from prejudice by removing grossly improper persons from participation in the administration of the law., Ex parte Wall, 107 U. S. 288, 2 Sup. Ct. 589, 27 Law Ed. 552. In such cases courts have no right, out of mere sympathy, to shut their eyes to gross moral delinquencies and merely suspend the offender for a short time, after which he may again practice his natural propensities upon an innocent and confiding public. Under such circumstances, it is the duty of the courts to at once remove the offender from the roll of honor and to protect the public and courts as far as possible from being exposed to his natural propensities. To do otherwise would be to condone the wrong and lower the standard of professional integrity, honesty, and fidelity, which we have neither the right nor the disposition to do."

Upon consideration of all the facts, the gravamen of the offense with which respondent is charged is contained in his own admission that he made the statement on more than one occasion that he had collected and delivered to Justice Clark the sum of $750 and had taken his receipt therefor, when in fact he had not done so, and further, the undenied testimony that he had claimed to have had several conversations with Justice Clark concerning an important case in which he appeared as counsel and had had ex-

hibited to him by Justice Clark an opinion in said case which was to be handed down at a later date, which, if true, was highly improper and which he now admits did not occur, for, to use his own language as contained in his verified answer, "in all conversations which ever took place between him and Justice Clark or any other member of this court he observed the utmost propriety."

Our examination and review of these cases brings us to the conclusion that in such cases no hard and fast rule can be laid down, but each case must be determined in accordance with its own circumstances and conditions, and we concede that the cases cited and referred to herein are not directly in point as to the facts and are applicable only in so far as they may be reasoned from by analogy. There are many cases to the general effect that using written or spoken language reflecting unjustly upon the character or integrity of the judge of the court is conduct unbecoming an attorney, and an indignity upon the court, and will justify the summary disbarment of the attorney guilty of it. See U. S. v. Green, 85 Fed. 857; Cobb v. U. S., 172 Fed. 641; In re Thatcher, 190 Fed. 969.

The reason for the rule announced herein is well stated in Re Snow, 27 Utah, 265, 75 Pac. 741, as follows:

"Such false and scandalous accusations when made by a sworn officer of the court, whose duty it is to maintain the respect, honor, and dignity of the judiciary, is a scandal that must necessarily affect the courts, and has a tendency to degrade and bring into public disrepute the entire judicial department of the state, and thereby weaken its efficacy and destroy its usefulness. If such practices are to be permitted and indulged in by attorneys who are indifferent to the duties imposed upon them by the oath they have taken, and who have but little or no regard for the ethics of the legal profession—and we regret to say experience has shown that occasionally one of this class is to be found in nearly every jurisdiction—the confidence that the masses of the people have always had in the courts of justice in this country, and the respect they have always entertained for them, are bound to be to some extent weakened and their moral support accordingly withdrawn. Accusations of so grave and serious a character, when made against a judge in his official capacity, as was done in this case, by an attorney, must necessarily have a much greater influence on the public mind than when made in the heat of passion by some defeated and disappointed litigant, as the public has a right to, and many no doubt

will, because of the attorney's position and his connection and affiliation with the courts and judicial officers, give credence to the charges, however false and unjustifiable they may be. Take away the confidence of the people, and the moral influence of both the bench and bar is gone, and their effectiveness destroyed, because the interests of the court and bar are so interwoven that one cannot be undermined without pulling down the other. The enforcement and protection of public and private rights—in fact, civil liberty itself—depends upon the independence of the bar being upheld and maintained inviolate on the one hand, and the respect and dignity of the courts on the other. In fact, no man who values his character, honor, and good name more than public notoriety, and who has a decent respect for the good opinion of his fellowmen, would ever aspire to become a member of a court if he is to be thus falsely and wantonly vilified and slandered by attorneys who are an integral part of the judicial machinery. And no attorney who has any regard for his own manhood and pride for his profession would care to practice before a court which has so far forgotten the respect it owes itself, and its duty to the public, as to permit such outrages to go unrebuked. Under our system of popular government, the only sure way for the courts to maintain the high standing for integrity and incorruptibility they have always occupied in the public mind is to merit it by a fearless and conscientious discharge of every moral and legal obligation imposed upon them. But even when they have done this courts cannot maintain their dignity, and retain the respect and confidence of the people, if they permit attorneys to recklessly, falsely, and without any justification or excuse whatever, make sweeping charges of official misconduct and corruption against the judicial officers."

See, also, People v. Green (Colo.) 3 Pac. 65; In re Brown (Wyo.) 4 Pac. 1085.

Counsel for respondent cites Bradley v. Fisher, 80 U. S. 335, 20 L. Ed. 647, as authority for the proposition that "disbarment should never be decreed where any punishment less severe, such as reprimand, temporary suspension, or fine, would accomplish the end desired." With this authority we are in hearty accord, and quote therefrom the following which immediately follows the language above quoted:

"But on the other hand, the obligation which attorneys impliedly assume, if they do not by express declaration take upon themselves, when they are admitted to the bar, is not merely to be obedient to the Constitution and laws, but to maintain at all times the respect due to courts of justice and judicial officers. This obligation is not discharged by merely observing the rules of courteous demeanor in open court, but it includes abstaining out of court from all insulting language and offensive conduct toward the judges personally for their judicial acts."

The duty of courts generally in cases of this kind and our duty in the instant case is again well defined in Re Joseph C. Jones, 70 Vt. 71, as follows:

"From these and many other authorities which might be cited, it is manifest that the object of admission to the bar is to bring to the administration of justice a class of highminded men of such education and training, and such mental and moral qualifications, as can and will aid in determining the rights and duties of all litigants, under all circumstances, according to law, so that the administration of the law may be pure, clean, and enlightened, and thereby every one obtain his exact rights and privileges. When one so admitted, by his conduct as an attorney, or as an individual, shows himself unworthy of his high calling and disgraces the office, it is the duty of the court, empowered to admit, to withdraw the rights and privileges conferred by the admission. It does this, not primarily as a punishment to him, but to protect the administration of justice"

—citing Ex parte Wall, supra; Ex parte Bradley, 7 Wall. (U. S.) 364; Dickens Case, 67 Penn. St. 169, 5 Am. Rep. 420; In re Cowdery, 69 Cal. 32, 58 Am. Rep. 545; State v. Kirke, 12 Fla. 278, 95 Am. Dec. 314. See, also, In re Boone, 83 Fed. 944; In re Newby (Neb.) 107 N. W. 850.

In concluding this opinion I want to repeat that we have considered this matter very carefully from the standpoint of respondent, and have given it a great deal of reflection. It is an unpleasant duty to perform, particularly of an attorney who has been an experienced and successful member of the bar of this state for a long period of time, but in view of the undenied testimony, coupled with respondent's own admissions, we can come to no other conclusion but that respondent has been clearly proven guilty of such unprofessional conduct as calls for disbarment, and a proper regard for our duty in the premises requires that we enter an order of disbarment herein and strike the name of respondent from the rolls of attorneys in this state, and it is so ordered.

BRANSON, C. J., MASON, V. C. J., and HARRISON, PHELPS, LESTER, and RILEY, JJ., concur.

CLARK, J., not participating in the judgment rendered.

HEFNER, J., absent and not participating.

Note.—See under (1) 6 C. J. pp. 580, 581,

§37, 2 R. C. L. p. 1086; 1 R. C. L. Supp. p. 698; 4 R. C. L. Supp. p. 138; 6 R. C. L. Supp. p. 122. (2) 6 C. J.p. 594, §53; p. 612, §93. (3) 6 C. J. p. 602, §63 (Anno); p. 613, §93. (4) 6 C. J. p. 581, §37; 2 R. C. L. p. 1088; 1 R. C. L. Supp. p. 698; 4 R. C. L. Supp. p. 138; 5 R. C. L. Supp. p. 125.